PAUL M. WARNER (#3389)
United States Attorney
ERIC A. OVERBY (#7761)
Assistant United States Attorney
185 South State Street, #400
Salt Lake City, Utah 84111-1506
(801) 524-5682



LOIS J. SCHIFFER
Assistant Attorney General
BERNICE I. CORMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1543

Attorneys for the United States

## UNITED STATES DISTRICT COURT DISTRICT OF UTAH
## CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　V.<br><br>MAGNESIUM CORPORATION OF AMERICA, RENCO METALS, INC., et al., The RENCO GROUP, INC., The RENNERT TRUSTS, JUSTIN W. D'ATRI AND UNIDENTIFIED TRUSTEES, and IRA L. RENNERT,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | COMPLAINT<br><br><br>**2:01 C V 0040  B**<br><br><br>Civil Action No.: |

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the United States Environmental

Protection Agency ("EPA"), files this complaint and alleges as follows:

### **NATURE OF THE CASE**

1. Plaintiff brings this civil action against Magnesium Corporation of America

("MagCorp"), Renco Metals, Inc., ("Metals"), the Renco Group, Inc. ("Group"), the Rennert

Trusts ("Trusts"), Justin W. D'Atri ("D'Atri") and unidentified trustees of the Rennet Trusts, and

Mr. Ira Leon Rennert ("Rennert"), to obtain injunctive relief and civil penalties for MagCorp's

numerous violations of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42

U.S.C. §§ 6901 *et seq.*, at MagCorp's magnesium production facility in Rowley, Utah, located

approximately 23 miles northwest of Grantsville, Utah (hereinafter, the "facility").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§§ 1331, 1345, and 1355, and Sections 3006(g) and (h) and 3008(a) of RCRA, 42 U.S.C. §§

6926(g), (h), 6928(a).

3. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c), and 1395(a),

and Sections 3006(g) and (h) and 3008(a) of RCRA, 42 U.S.C. §§ 6926(g), (h), 6928(a), because

MagCorp was at all material times, and is, doing business in this district.  The events giving rise

to the claims alleged herein occurred in this district.

4. Authority to bring this action is vested in the United States Department of Justice

pursuant to 28 U.S.C. §§ 516 and 519.

## NOTICE

5. Notice of the commencement of this action has been given to the State of Utah, as

required by Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

## DEFENDANTS

6. MagCorp, whose business address is 238 North 2200 West, Salt Lake City, Utah 84116,

is a corporation organized under the laws of the State of Delaware.

7. MagCorp is a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. §

6903(15), 40 C.F.R. § 260.10, and Utah Admin. R. R315-1-1(b).

8. At all material times herein, MagCorp was and is the "owner" and "operator" of a "facility," as those terms are defined in 40 C.F.R. § 260.10, and Utah Admin. R. R315-1-1(b), whose waste management activities, including "treatment," "storage," and/or "disposal" of hazardous wastes at the facility, were and are subject to regulation under RCRA.

9. At all times material herein, MagCorp was and is a "generator," within the meaning of 40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b), which produced and produces waste regulated as hazardous under RCRA.

10. Mr. Ira Leon Rennert, whose address is 625 Park Avenue, New York, NY 10021, is Chairman of the Board of Group, Metals and MagCorp. Rennert is the sole director of Metals and also is the Chief Executive Officer of Group and Metals.

11. Rennert established Trusts for the benefit of himself and members of his family (hereinafter the "Trusts"). After a reasonable opportunity for further investigation or discovery, the evidence is likely to show that some of the Trusts are located in New York. Justin D'Atri is or was a Trustee of the Trusts; other unidentified persons are Trustees of the Trusts.

12. The Trusts own 100% of Group. Group, whose business address is 30 Rockefeller Plaza, Suite 4225, New York, NY 10012, is incorporated under the laws of the State of New York as a Subchapter S corporation whose profits and losses are attributed to its owners for income tax purposes. Group is also a holding company that owns, *inter alia*, 100% of Metals' stock. Group also owns numerous other concerns in the United States and abroad.

13. Metals, whose business address is 238 North 2200 West, c/o MagCorp, Salt Lake City, Utah 84116, is incorporated under the laws of the State of Delaware. Metals is a holding

-3-

company with no independent operations of its own. MagCorp became a wholly-owned subsidiary of Metals in 1993, as did a second company, Sabel Industries, Inc. ("Sabel"). From the time of Metals' incorporation in 1993 to early December, 2000 Metals' income was generated by MagCorp and Sabel. Sabel was sold to K. Sabel Holdings, Inc. in December, 2000, for $8 million cash. Prior to this sale, Sabel accounted for approximately 25% of Metals' income.

## GENERAL ALLEGATIONS

### *Statutory and Regulatory Framework*

14. Federal regulation of hazardous waste is primarily based on RCRA, enacted on October 21, 1976 to amend the Solid Waste Disposal Act, and on the Hazardous and Solid Waste Amendments Act ("HSWA"), enacted by Congress in 1984 to further amend the Solid Waste Disposal Act.

15. RCRA's Subchapter III (RCRA §§ 3001 - 3023, 42 U.S.C. §§ 6921 - 6940) (also known as "Subtitle C") required EPA to promulgate regulations establishing performance standards applicable to facilities that generate, transport, treat, store and dispose hazardous wastes. Together, RCRA Subtitle C and its implementing regulations, set forth at 40 C.F.R. Parts 260 - 272, comprise EPA's RCRA hazardous waste program. RCRA Subtitle C also required that EPA promulgate regulations governing recycled oil and setting forth standards for the management, including storage, of used oil, both of which are hazardous wastes. RCRA § 3014, 42 U.S.C. § 6935. EPA's used oil regulations are codified at 40 C.F.R. Part 279.

16. RCRA Section 3006, 42 U.S.C. § 6926, allows the Administrator to authorize a state to

-4-

administer its own hazardous waste program in lieu of the federal program when the Administrator deems the state program to be equivalent to the federal program.  Where a state obtains such authorization, state requirements will apply in lieu of the federal requirements.

17. EPA authorized the State of Utah to administer its hazardous waste program in lieu of the federal program on October 10, 1984, effective October 24, 1984, and has authorized numerous revisions to the Utah program since then.  Pursuant to such authorizations, the State of Utah, through its Department of Environmental Quality ("UDEQ"), has administered the core RCRA hazardous waste program in the State through enactment of its Solid and Hazardous Waste Act, Utah Code Ann. §§ 19-6-101, *et seq.*, and rules and regulations promulgated thereunder, set forth at Utah Admin. R. Title R315.  EPA authorized Utah to administer its used oil program on January 13, 1999, effective March 15, 1999.  Utah's used oil regulations are set forth at Utah Admin. R. R315-15.

18. While Utah has independent enforcement authority, EPA retains the right to conduct inspections under Section 3007 of RCRA, 42 U.S.C. § 6927, and to take enforcement actions under Section 3008, 3013 and 7003 of RCRA, 42 U.S.C. § 6928, 6934 and 6973, regardless of whether Utah has acted.  See 49 Fed. Reg. 41036 (October 19, 1984); 51 Fed. Reg. 37729 (October 24, 1986); 54 Fed. Reg. 20847 (May 15, 1989); 56 Fed. Reg. 21601 (May 10, 1991) and 59 Fed. Reg. 16568 (April 7, 1994).

19. Pursuant to Sections 3006(g), 3008(a), (g) and (h) of RCRA, 42 U.S.C. §§ 6926(g), 6928(a), (g) and (h), the United States may also enforce the federally-authorized Utah hazardous waste program (as well as federal regulations promulgated pursuant to HSWA until EPA authorizes the State to enforce the Utah program), by filing a civil action in United States District

Court for injunctive relief and civil penalties.

20. In July, 2000, Utah codified a new numbering system for sections within Utah Admin. R. Subtitles R315-5, R315-6 and R315-3. As EPA has not yet authorized these new regulations, this Complaint seeks enforcement only of the earlier regulations. However, as the new regulations are more readily accessible, for convenience, this Complaint cites to both the earlier (authorized) regulations and the new (renumbered) regulations, where applicable.

21. Under RCRA and the Utah program, a waste is "hazardous," first, if it is a "solid waste," which term includes, *inter alia*, a liquid, semisolid, or contained gaseous material; and second, if it is either listed as a hazardous waste, or exhibits the characteristic of ignitability, corrosivity, reactivity, or toxicity. RCRA §§ 1004(5), 1004(27) and 3001, 42 U.S.C. §§ 6903(5), (27) and 6921, and 40 C.F.R. Part 261; Utah Code Ann. 19-6-102(9), and 19-6-102(17)(a), Utah Admin. R. R315-2. Generally, a waste exhibits the characteristic of corrosivity if it either has a pH less than or equal to 2; or is a liquid and corrodes steel at a rate greater than 6.35 mm per year at a test temperature of 55 decrees Celsius. 40 C.F.R. § 261.22; Utah Admin. R. R315-2- 9(e). A waste exhibits the characteristic of toxicity if it leaches contaminants at concentrations greater than specified values. 40 C.F.R. § 261.24; Utah Admin. R. R315-2-9(g).

22. The federal and Utah hazardous waste programs primarily regulate hazardous waste management facilities through a permitting process. The programs require each person owning or operating a hazardous waste treatment, storage, or disposal facility ("TSD facility") to have a permit or plan approved, and prohibit the treatment, storage or disposal of hazardous waste except in accordance with the permit. Section 3005 of RCRA, 42 U.S.C. § 6925 and 40 C.F.R. Parts 264, 268 and 270 and Utah Code Ann. § 19-6-108, Utah Admin. R315-8, R315-13 and

R315-3.  The federal and State programs also provide that a hazardous waste facility in existence

on the effective date of statutory or regulatory changes that render the facility subject to the

requirements to have a permit, may qualify for "interim status" to continue operating until final

action is taken by EPA or the State with respect to the facility's permit application, so long as the

facility satisfies specified conditions.  Section 3005(e) of RCRA, 42 U.S.C. § 6925(e) and 40

C.F.R. Part 265; Utah Code Ann. § 19-6-108(3)(f), Utah Admin. R. R315-7.

23. In addition to banning "disposal" of hazardous waste except in accordance with a

permit, EPA and Utah also ban what is known as "land disposal" of specified hazardous wastes,

unless such hazardous wastes are first treated in compliance with specified treatment levels or

methods known as "land disposal restrictions," or "LDRs."  RCRA Section 3004(d), 40 C.F.R.

Part 268, and Utah Admin. R. R315-13-1.  The federal and authorized Utah LDRs are set forth in

40 C.F.R. Part 268, and Utah Admin. R. R315-13, respectively.

24. Under the federal and Utah programs, "land disposal," when used with respect to a

specified hazardous waste, includes any placement of such waste in a landfill or surface

impoundment.  RCRA § 3004(k), 42 U.S.C. § 6924(k); Utah Admin. R. R315-13-1.  A "surface

impoundment" is "a facility or part of a facility which is a natural topographic depression,

man-made excavation, or diked area formed primarily of earthen materials (although it may be

lined with man-made materials), which is designed to hold an accumulation of liquid wastes or

wastes containing free liquids, and which is not an injection well."  40 C.F.R. § 260.10 and Utah

Admin. R R315-1-1(b).  A "landfill" is "a disposal facility or part of a facility where hazardous

waste is placed in or on land and which is not . . . a surface impoundment . . . or a corrective

action management unit."  40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b).

25. The federal and Utah programs also regulate generation of hazardous waste, whether or not a facility also treats, stores or disposes hazardous waste or is otherwise required to obtain a permit or interim status. The programs require, *inter alia*, that each person properly store, label, manifest, and inspect hazardous waste it generates. Section 3002 of RCRA, 42 U.S.C. § 6925, 40 C.F.R. Part 262; and Utah Admin. R. R315-5.

26.   The federal and Utah programs also generally require that TSDs seeking permits perform corrective action for all releases of hazardous wastes or constituents (as that term is used in 40 C.F.R. § 261.11(a)(3), Utah Admin. R. R315-2-9(c)(1)(iii)) from any solid waste management unit at the facility and beyond the facility boundary, regardless of the time at which waste was placed in such unit. RCRA §§ 3004(u) and (v), 42 U.S.C. § 6924(u), (v), 40 C.F.R. §§ 264.552 - 554; Utah Code Ann. § 19-6-105(d), Utah Admin. R. R315-8-21, R 315-7-8.1(b). EPA authorized Utah to implement certain corrective action requirements on March 15, 1999. In addition, whenever EPA or Utah determine there has been a release of hazardous waste into the environment from a facility that has interim status, that once had interim status, or that should have had interim status, they may commence a civil action for appropriate relief, including an injunction requiring a defendant to take corrective action necessary to protect human health and the environment. RCRA § 3008(h), 42 U.S.C. § 6928(h); Utah Code Ann. § 19-6-112.

### ***General Factual Allegations***

27. MagCorp is the largest producer of magnesium in the United States, and the third largest magnesium producer in the world. MagCorp is able to produce roughly 40,000 tons per year of magnesium and magnesium alloys. MagCorp also produces liquid chlorine, hydrochloric acid, ferrous and ferric chloride, calcium chloride, and potassium-containing salts.

28. The facility was constructed in 1972, under the ownership of National Lead, Inc. ("NL"). In 1980, AMAX, Inc. purchased the facility from NL, and operated it through its subsidiary, AMAX Magnesium Corp. In 1989, RENMAG, Inc. purchased the stock of AMAX Magnesium Corp. and changed its name to Magnesium Corporation of America, or MagCorp. The facility occupies 4,525 acres of land in the Tooele County desert west of the Great Salt Lake.

29. MagCorp's manufacturing operations generally include removing minerals from, *inter alia*, Great Salt Lake surface waters and groundwater brines by concentrating the waters in solar evaporating ponds and in concentrator tanks which utilize waste heat from other facility processes; treating the concentrated brine to remove potassium, boron and sulfates; spray drying the brine to produce an impure anhydrous magnesium-rich powder; melting and chlorinating the powder to convert magnesium oxide therein into magnesium chloride; separating the molten magnesium metal from chlorine gas by electrolysis; casting the magnesium into desired products; and capturing, and recycling or selling, chlorine gas and hydrochloric acid generated in the electrolytic refining process.

30. MagCorp's manufacturing facilities include solar evaporation ponds; a boron plant; a calcium chloride plant; spray dryers; melt cells; electrolytic cells; a chlorine plant; hydrochloric acid manufacturing plant; a cast house; and a ferrous and ferric chloride processing plant.

31. MagCorp commingles and disposes thousands of gallons per day of liquids and solids through a series of pipes and underground ditches that collect drainage from the facility. Two of the ditches, which MagCorp employees call the "Chlorine Plant Ditch" and the "Central Ditch," flow into a third ditch, which MagCorp employees call the "Red River" because of its color and contents. A number of pipes also discharge waste from the facility directly into the Red River.

MagCorp disposes waste containing its Pentapure Solids, and its High Energy Scrubber waste,

into one or a series of collection tanks, which in turn feed into pipes which discharge into the

Red River.  EPA sampling of the Pentapure Solids shows that these are hazardous (or toxic)

because of their chromium content.  EPA sampling of the High Energy Scrubber waste shows

that this is hazardous (or corrosive) because it has a pH of less than 2.  The Red River, which is

approximately 2000 feet long, 10 - 20 feet deep, and 20 - 40 feet wide, in turn, discharges into a

400-Acre Pond.  EPA sampling of the Red River shows that its contents have a pH of 2,

rendering these hazardous for corrosivity.

     32.  Each of the Ditches and the 400-Acre Pond, collectively or singularly, constitute a

"surface impoundment" within the meaning of 40 C.F.R. § 260.10 and Utah Admin. R.

R315-1-1(b).  Neither the Ditches, nor the Pond, are lined to prevent infiltration of liquids into

the ground.  MagCorp has admitted that there is a hydrogeologic connection between the 400-

Acre Pond and the Great Salt Lake.  EPA sampling of the 400-Acre Pond shows that the contents

have a pH of less than 2, rendering them hazardous for corrosivity.

     33. The Chlorine Plant Ditch, which MagCorp employees also call the "White Ditch"

because of the whitish-greenish cake-like solids and liquids therein, primarily collects waste

flows from MagCorp's Chlorine Plant, and discharges these to the Red River.  The Chlorine

Plant Ditch is approximately one-half mile long, 10 - 15 feet deep, and 10 - 20 feet wide.  At

least 2 pipes, which MagCorp employees call "Outfall 1" and "Outfall 2," discharge Chlorine

Plant wastes into the Ditch.  During its inspections, EPA identified wastes generated at the

Chlorine Plant as coming from MagCorp's Chlorine Plant Water Wash Column.  EPA sampling

of the Chlorine Plant Water Wash Column shows that this waste has a pH of less than 2,

rendering it hazardous for corrosivity.

34. The Central Ditch, which also discharges to the Red River, is also approximately one-half mile long, 10 - 15 feet deep, and 10 - 20 feet wide.  At least 3 pipes discharge wastes from the electrolytic, melt reactor, and hydrochloric acid production areas into the Central Ditch. MagCorp discharges its Chlorine Reduction Burner waste through one or more of these pipes into the Central Ditch.   EPA sampling of MagCorp's Chlorine Reduction Burner Waste shows that this waste has a pH of less than 2, rendering it hazardous for corrosivity.

35. EPA sampling also shows the presence of numerous hazardous constituents, including hexachlorobenzene ("HCB") in the waste containing MagCorp's Pentapure Solids at 360 parts per million ("ppm").  HCB leaching in amounts exceeding 0.13 ppm render a waste hazardous. EPA sampling also shows the presence of HCB in MagCorp's Chlorine Plant Water Wash Column and in its Chlorine Reduction Burner Waste, as well as in packing tower residues, Central Ditch contents and sediments, smut piles, and solids in the 400-Acre Pond.

36. EPA sampling of spent solids in a pit in which MagCorp manufactures Ferrous and Ferric Chloride, which solids MagCorp disposes in its on-site industrial landfill, show that MagCorp's Ferrous and Ferric Chloride Solids are hazardous because of their chromium or arsenic content.  The landfill constitutes a "Landfill" within the meaning of 40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b).

37. MagCorp disposed waste in a 1200-acre pond immediately adjacent to the shores of the Great Salt Lake until 1986, when the Lake's waters rose and the walls of the 1200-acre pond were breached, causing the pond's contents to empty into the Great Salt Lake.   The 1200-acre pond constitutes a solid waste management unit, that was never properly closed, as is required by

40 C.F.R. §§ 264.110 and 265.110 and Utah Admin. R. R315-8-7 and R315-7-14, and that is subject to corrective action requirements under RCRA § 3004(u), (v), and Utah Code Ann. §19-6-105(d), and Utah Admin. R. R315-8-21, and R 315-7-8.1(b).

38. MagCorp disposes solid wastes, including casthouse residue, sludge residual from its electrolytic cells (which MagCorp calls "smut"), and cell salts, in unlined, uncovered residual piles. Sampling to date shows that these piles contain hazardous constituents, including dioxin, HCB, lead, arsenic, chromium, barium and magnesium hydroxide.

39. The facility has numerous sumps, or pits. MagCorp stores Pentapure Solids in a series of sumps in the electrolytic cell area. MagCorp had disposed waste from its laboratory (containing arsenic, barium, and other metals) in a sump outside its laboratory building. The sump conveyed the lab waste to the Central Ditch, and ultimately, to the Red River/400-Acre Pond. As of March 25, 1997, upon MagCorp's payment of a $2,500 penalty, and entry into a settlement with Utah resolving Utah's 1992 enforcement action, MagCorp ceased disposing metal-bearing laboratory wastes in its Ditches and Ponds. The violations which were the subject of the Utah enforcement action were and are different in time and substance from those alleged in this complaint.

40. The smut piles, sumps, and units into which MagCorp formerly disposed hazardous waste, or presently disposes hazardous constituents, constitute solid waste management units, and are subject to the corrective action requirements set forth in RCRA § 3004(u), (v) and Utah Code Ann. §19-6-105(d), and Utah Admin. R. R315-8-2, and R 315-7-8.1(b).

41. MagCorp has never sought a permit to treat, store or dispose under RCRA and the authorized Utah hazardous waste program.

42. MagCorp has never sought interim status to treat, store or dispose under RCRA and the authorized Utah hazardous waste program.

### *Regulatory Status of MagCorp's Wastes*

43. The Bevill Amendment temporarily excluded from RCRA Subtitle C regulation solid wastes generated by the extraction, beneficiation, and processing of ores and minerals, pending EPA's provision of a  report to Congress and decision whether regulation of such wastes was warranted.  RCRA §§ 3001(b)(3)(A)(ii), 8002(f); 42 U.S.C. §§ 6921(b)(3)(A)(ii), 6982(f), and Utah Code Ann. § 19-6-102(17)(b)(iv).

44. In September, 1989, EPA promulgated a rule that removed all mineral processing wastes from the Bevill exclusion, with the exception of certain wastes which would be permanently retained within the exclusion, and certain other such wastes which would be conditionally retained pending further analysis by EPA in accordance with RCRA § 8002(p), 42 U.S.C. § 6982(p).

45. Mineral processing wastes which lost their Bevill excluded status automatically became subject to Utah hazardous waste regulation on December 13, 1994, upon the effective date of EPA's authorizing Utah to implement subtitle C requirements as to such wastes (59 Fed. Reg. 52084 (October 14, 1994); and became subject to the further treatment requirements set forth in EPA's "Phase IV LDR" regulation on August 24, 1998 (63 Fed. Reg. 28566 (May 26, 1998)), the effective date of the EPA rule.  At present, enforcement of such treatment requirements is solely EPA's responsibility through the federal regulation, since Utah is not yet authorized to implement such treatment requirements.

46. One of the wastes EPA had conditionally retained for further analysis, as set forth in

-13-

its 1989 rule, was "process wastewater from primary magnesium processing by the anhydrous process." 54 Fed. Reg. 36592 (September 25, 1989).  That waste occurred and still occurs only at the Rowley, Utah facility.

47. In July 31, 1990, EPA reported to Congress that two "mineral processing" wastes -- first, a "scrubber underflow," generated through processing of hydrochloric acid formed when the impure magnesium powder is melted and chlorinated to convert magnesium oxide in the powder into the chloride salt; and second, a "scrubber liquor," generated from processing gas created when electrolysis is used to separate the molten magnesium chloride into magnesium and chlorine gas -- should remain excluded from hazardous waste regulation under the Bevill Amendment.

48. EPA solicited public comment on the Report to Congress and its underlying data on August 7, 1990 (55 Fed. Reg. 32135), and extended the time for submission of public comment on September 12, 1990 (55 Fed. Reg. 37540).

49. By rule dated June 13, 1991, EPA codified its exclusion of "process wastewater from primary magnesium processing by the anhydrous process" under the Bevill Amendment.  56 Fed. Reg. 27300 (June 13, 1991).  40 C.F.R. § 261.4(b)(7)(ii)(O); Utah Admin. R. R315-2-4(b)(7)(ii)(O).

50. None of the wastes that are the subject of this complaint constitute "process wastewater from primary magnesium processing by the anhydrous process."  Rather, they constitute wastes generated in MagCorp's manufacture of chlorine gas, hydrochloric acid, and ferrous and ferric chloride.

51. In the alternative, some of the wastes are mineral processing wastes, but were not

-14-

identified by EPA in its July, 1990 Report to Congress, and do not constitute melt cell hydrochloric acid scrubber underflow or electrolytic cell chlorine gas scrubber liquor.

52. None of the wastes that are the subject of this complaint are "Bevill-excluded" wastes. Rather, they are subject to federal and Utah hazardous waste regulation.

53. At the request of UDEQ, EPA inspected the MagCorp facility in 1997 and 1998. EPA concluded that MagCorp was incorrectly characterizing its waste streams as excluded from RCRA and Utah hazardous waste regulation by the Bevill Amendment.

54. On March 5, 1999, UDEQ requested that EPA assume lead agency status in enforcing hazardous waste requirements at the MagCorp facility.

### *Piercing the Corporate Veil*

55. Rennert, individually or through the Trusts created by him, controls Group, Metals, and MagCorp.

56. MagCorp is a wholly owned subsidiary of Metals. Metals is a wholly owned subsidiary of Group, and Group is 100% owned by the Trusts.

57. MagCorp is a closely held corporation that is undercapitalized, insolvent on a balance sheet basis, and unable to pay its debts to the United States. MagCorp's sales in 1999 were nearly $150 million, but as of April, 2000, MagCorp had a negative equity of approximately $14 million.

58. Metals is a closely held corporation that is undercapitalized, insolvent on a balance sheet basis, and unable to pay its debts to the United States. As of January, 2001, Metals had a negative equity of approximately $50 million.

59. Group's sales in 1999 were approximately $2.5 billion.

60. Due to its ownership of all the capital stock of Metals, Group directs and controls the management and policies of Metals, including mergers, sales of assets, debt transactions, designation of Metals' board of directors and officers, and other corporate activities which, but for the control of Group and therefore of Rennert and the Trusts, would be conducted by Metals. Metals has paid excessive dividends to Group, which resulted in burdening MagCorp with excessive debt and contributing to its insolvency.

61. Metals' 1999 Annual Report to the Securities Exchange Commission ("SEC"), states:

> All of [Metals'] issued and outstanding capital stock is owned by [Group,] which is owned by [the Trusts] established by Mr. Ira Leon Rennert, the Chairman and Chief Executive Officer of [Metals] and Group, for himself and members of his family. As a result of such ownership, Mr. Rennert controls [Metals] and its subsidiaries [then MagCorp and Sabel].

62. Rennert is the sole director of Metals, a holding company with no independent operations of its own. Rennert exercises significant control over Metals' officers by, *inter alia*, determining compensation for Metals' executive officers, which is fixed by negotiations between those officers and Rennert, with Rennert acting on behalf of Group.

63. As a result of transactions directed by Rennert, MagCorp is insolvent on a balance sheet basis and unable to pay its debts owed to the United States. Such transactions include, but are not limited to, significant indebtedness incurred in 1996, when Metals sold Senior Notes ("Notes") worth $150 million, payable in 2003. To effectuate the sale, Metals pledged the net assets of MagCorp and Sabel as collateral, and committed significant cash flow from them to service the debt. Such guarantee obliged MagCorp and Sabel unconditionally and fully, jointly and severally, to pay semi-annual interest payments of more than $8 million, and to redeem the

-16-

Notes when they become due. Metals used the proceeds from the 1996 sale largely to (a) help pay an $88.9 million dividend to Group, (b) retire Metals' preferred stock (which entailed paying Group another $8.5 million, as Group was the preferred stockholder), and (c) make certain compensation payments to officers of MagCorp. Sabel is no longer a subsidiary of Metals, and is no longer a guarantor of the Notes. As of December, 2000, MagCorp is the sole guarantor of the Notes.

64. These 1996 and 2000 actions, along with other transactions resulting in the transfer of significant assets of MagCorp to Metals, Group, and the officers of MagCorp had the effect of substantially reducing the assets of MagCorp, leaving the corporation undercapitalized or insolvent on a balance sheet basis.

65. The above-described incurrence of debt and simultaneous payment of dividends, as well as other transactions, constitute siphoning of MagCorp's, and Metals' corporate funds by Group, Rennert and the Trusts.

66. Metals' June 25, 1996 SEC Second Amended Registration Statement provides:

> Under federal or state fraudulent conveyance laws, the Senior Notes might, under certain circumstances, be subordinated to existing or future indebtedness of [Metals] or found not to be enforceable in accordance with their terms. Under these statutes, if a court were to find that (i) the Senior Notes were incurred or the guarantees (the "Guarantees") of the Guarantors [then MagCorp and Sabel] were entered into with the intent of hindering, delaying or defrauding creditors or that [Metals] received less than a reasonably equivalent value or fair consideration for the Senior Notes and (ii) [Metals] or the Guarantors were insolvent immediately prior to the time the Senior Notes were issued and the Guarantees were incurred, as the case may be, were engaged in a business or transaction for which the assets remaining with [Metals] or the Guarantors constituted unreasonably small capital, or intended to incur, or believed that it would incur, debts beyond its ability to pay such debts as they matured, such court could void [Metals'] and the Guarantors' obligations under the

-17-

> Senior Notes, or subordinate the Senior Notes and the Guarantees to all
> other indebtedness of [Metals] and the Guarantors, as the case may be . . . .
> Nor can there be any assurance that a court would not determine,
> regardless of whether [Metals] or the Guarantors were insolvent on the
> date the Senior Notes were issued, that the payments constituted
> fraudulent transfers on another ground.

67. Some of Metals' annual reports to the SEC (10-Ks) filed with regard to its 1996

incurrence of debt include explanations of and amendments to compensation agreements with

certain of MagCorp's officers.  The 10-Ks stated that, in anticipation of its incurrence of the $150

million indebtedness, which was projected to leave Metals with a negative equity of $50 million,

MagCorp would pay certain officers bonuses exceeding $1 million each, consistent with its

employee participation agreements.  Payments pursuant to such agreements, in conjunction with

incurring debt, furthered MagCorp's and Metals' insolvencies.

68. Rennert, the Trusts, Group and Metals have so dominated and controlled the activities

and assets of MagCorp that they have failed to respect MagCorp's separate existence.

Disregarding MagCorp's separate existence and making the corporation insolvent by transfer of

its assets to at least Group and Metals perpetuates a fraud or visits an injustice or an inequity on

the United States.

69. Rennert's dealings with the assets of MagCorp constitutes a pattern of activity

engaged in by Rennert with other corporations controlled by him of transferring the assets of a

corporation to make the debtor corporation insolvent and defraud its creditors, including the

United States.

70. Rennert controls the Trusts, Group, Metals and MagCorp as if they were one entity.

Rennert, the Trusts, Group and Metals are MagCorp's alter egos.  Rennert, the Trusts, Group and

-18-

Metals are liable for the acts and omissions of MagCorp.

71.  The term "MagCorp" shall hereafter refer collectively to MagCorp, Metals, Group, the Trusts and Rennert.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Failure To Make Hazardous Waste Determinations As Generator)

72. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

73. MagCorp is a person who "generates" solid waste, within the meaning of 40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b).

74. Pursuant to 40 C.F.R. §§ 262.10(c) and 262.11; Utah Admin. R. R315-5-1(c) (renumbered as R315-5-1.10(c) (2000)), Utah Admin. R. R315-5-2 (renumbered as R315-5-1.1 (2000)), a person who generates solid waste must determine if that waste is a hazardous waste prior to making any decisions as to how to manage such waste, first by determining if the waste is excluded from regulation under 40 C.F.R. § 261.4 and Utah Admin. R. R 315-2-4; then by determining if the waste is listed as a hazardous waste in 40 C.F.R. Part 261, Subpart D, and Utah Admin. R. R315-2-10; then, by either applying knowledge of the hazard characteristic of the waste in light of the materials or the processes used, or by testing the waste using specified sampling methods, determining if the waste is a characteristic hazardous waste under 40 C.F.R. Part 261, Subpart C and Utah Admin. R. R315-2-9.

75. MagCorp has never characterized its Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction Burner Waste, High Energy Scrubber Waste, or Ferrous and Ferric

Chloride Solids.

76. Each failure to make hazardous waste determinations as required by 40 C.F.R. §
262.11 and Utah Admin. R. R315-5-2 (renumbered as R315-5-1.11 (2000)), constitutes a
separate violation of the regulations for each solid waste, for which MagCorp is subject to
injunctive relief, and for civil penalties not to exceed $25,000 per day for each day of violation
prior to January 30, 1997, and $27,500 per day for each such violation occurring after January
30, 1997.

**SECOND CLAIM FOR RELIEF**
(Violation of Standards Pertaining to Hazardous Waste Generators)

77. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein
by reference.

78. MagCorp is a person who "generates" solid waste, within the meaning of 40 C.F.R. §
260.10 and Utah Admin. R. R315-1-1(b).

79. A person who generates hazardous waste may accumulate hazardous waste on-site for
up to 90 days without a permit or interim status, provided that such person complies with certain
standards, including, *inter alia*, the following:

a. Personnel Training, Emergency Planning and Procedures
Planning and Prevention, and Land Disposal Restriction Notices

80. Pursuant to 40 C.F.R. § 262.10(c) and Utah Admin. R. R315-5-1(c) (renumbered as
R315-5-5-1.10(c) (2000)); and 40 C.F.R. § 262.34(a)(4), Utah Admin. R. R315-5-10
(renumbered as R315-5-3.34 (2000)), a person who generates hazardous waste may accumulate
hazardous waste on-site for 90 days or less without a permit or without having interim status
provided that, *inter alia*, the person complies with the requirements for owners or operators set

-20-

forth in 40 C.F.R. Part 265, Subpart C and Utah Admin. R. R315-7-10; 40 C.F.R. Part 265, Subpart D and Utah Admin. R. R315-7-11; 40 C.F.R. § 265.16 and Utah Admin. R. R315-7-9.7; and 40 C.F.R. § 268.7(a)(4) and Utah Admin. R. R315-13-1, pertaining to personnel training, emergency planning and procedures, preparedness and prevention, and land disposal restriction notices.

81. MagCorp generates and accumulates hazardous waste, and has generated and accumulated hazardous waste for at least the last five years, but on at least one occasion has failed to prepare a complete contingency plan, in violation of 40 C.F.R. § 265.52(a) and Utah Admin. R. R315-7-11.3(a);  on at least one occasion, has failed to submit an updated contingency plan to local emergency response teams, in violation of 40 C.F.R. § 265.53 and Utah Admin. R. R315-7-11.4; on at least one occasion, has failed to provide an adequate training program for its employees, in violation of 40 C.F.R. § 265.16(a) and Utah Admin. R. R315-7-9.7(a); on at least one occasion, has failed to adequately document that its employees have taken the required training, in violation of 40 C.F.R. § 265.16(d)(3) and Utah Admin. R. R315-7-9.7(d)(3); and has failed to maintain documentation in compliance with land disposal restrictions for at least 4 shipments of its hazardous wastes, in violation of 40 C.F.R. § 268.7(a)(8) and Utah Admin. R. R315-13.

### b.  Standards Pertaining to Hazardous Waste Manifests

82. Pursuant to 40 C.F.R. §§ 262.10(c), 262.10(h) and 262.20 and Utah Admin. R. R315-5-1(c) (renumbered as R315-5-1.10(c) (2000)), R315-5-1(h) (renumbered as R315-5-1.10(h) (2000)) and R315-4-2(a) - (d), (1) (renumbered as R315-5-2.20 (2000)), a person who generates hazardous waste may accumulate hazardous waste on-site for 90 days or less without a

permit or without having interim status provided that, *inter alia*, that person, when shipping hazardous waste from its facility, complies with requirements pertaining to, *inter alia*, record-keeping, and preparation and maintenance of copies of hazardous waste manifests. MagCorp ships and has shipped hazardous waste from its facility, but failed to properly complete at least 5 manifests, in violation of 40 C.F.R. § 262.20 and Utah Admin R. R315-4-2(a) - (d), (1) (renumbered as R315-5-2.20 (2000)); and failed to properly retain at least 1 manifest, during the time period from September 1995 through April 1999, in violation of 40 C.F.R. § 262.40 and Utah Admin. R. R315-5-5  (renumbered as R315-5-4.40 (2000)).

### c. Standards Pertaining to Inspections

83. Pursuant to 40 C.F.R. § 262.10(c) and 262.34(a)(1)(i); Utah Admin. R. R315-5-1(c) (renumbered as R315-5-1.10(c) (2000)) and R315-5-10 (renumbered as R315-5-3.34 (2000)), a person who generates hazardous waste may accumulate hazardous waste on-site for 90 days or less without a permit or without having interim status provided that, *inter alia*, the person complies with the requirements set forth in 40 C.F.R. Part 265, Subpart I, Utah Admin. R. R315-7-16.1 pertaining to conduct of weekly inspections.

84. MagCorp generates and accumulates hazardous waste on-site, and has generated and accumulated hazardous waste on-site, but failed to conduct at least 5 weekly inspections during the time period from September 1995 through April 1999, in violation of 40 C.F.R. §§ 262.34(d)(2) and 265.174; Utah Admin. R. R315-5-10 (renumbered as R315-5-3.34 (2000)) and R315-7-16.5.

### d. Failure to Properly Manage Hazardous Waste in Containers

85. Pursuant to 40 C.F.R. §§ 262.10(c) and 262.34(a)(1)(i); Utah Admin. R. R315-5-1(c)

(renumbered as R315-5-1.10(c) (2000)) and R315-5-10 (renumbered as R315-5-3.34 (2000)), a person who generates hazardous waste may accumulate such waste on-site for 90 days or less without a permit or without having interim status, provided that such person complies with, *inter alia*, the requirements pertaining to use and management of containers set forth in 40 C.F.R. Part 265, Subpart I; Utah Admin. R. R315-7-16.

86. 40 C.F.R. § 265.173 and Utah Admin. R. R315-7-16.4 require that containers holding hazardous waste be closed during storage, except when necessary to add or remove waste.

87. 40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b) define a container as any portable device in which a material is stored, transported, treated, disposed of, or otherwise handled.

88. During an April, 1999 inspection, an EPA inspector observed that MagCorp stores at least 1 drum of carbon tetrachloride waste in its 90-day storage yard; stores Pentapure Solids in 3 open sumps; stores Ferrous and Ferric Chloride Solids on an open roll-off; and that one of MagCorp's carbon tetrachloride drums had a hole in the bung cap, in violation of 40 C.F.R. § 265.173 and Utah Admin. R. R315-7-16.4.

e. Violation of Requirements Pertaining to Treatment in Containers

89. Pursuant to 40 C.F.R. §§ 262.10(c) and 262.34(a)(1)(i); Utah Admin. R. R315-5-1(c) (renumbered as R315-5-1.10(c) (2000)) and R315-5-10 (renumbered as R315-5-3.34 (2000)), a generator may treat hazardous waste it accumulates on-site for 90 days or less without a permit or without having interim status provided that, *inter alia*, it complies with the requirements set forth in 40 C.F.R. Part 262, and Part 265, Subpart I; Utah Admin. R. R315-5 and R315-7-16.

90. MagCorp has acknowledged that it treats carbon tetrachloride in containers in its

90-day yard prior to shipment.

91. During the last five years, MagCorp has failed to maintain the containers in which it is treating the carbon tetrachloride in good condition, and keep the containers closed, as required by 40 C.F.R. Part 265, Subpart I and Utah Admin. R. R315-7-16.

92. During the last five years, MagCorp has treated carbon tetrachloride in a container in violation of the regulations allowing treatment for 90 days without a permit and without interim status.  40 C.F.R. §§ 262.34(a)(1)(i) and 268.7(a)(5); Utah Admin. R. R315-5-10 (renumbered as R315-5-3.34 (2000)), R315-13-1.

93. Each day which MagCorp violates or has violated the above-enumerated requirements for each solid waste constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day for each day of violation prior to January 30, 1997, and $27,500 per day for each such violation occurring after January 30, 1997.

## THIRD CLAIM FOR RELIEF
### (Violation of Standards Pertaining to Generators of Used Oil)

94. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

95. MagCorp is a generator of "used oil," within the meaning of 40 C.F.R. § 279.20(a) and Utah Admin. R. R315-15-2(a).

96. "Used oil" is defined in 40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b) to mean "any oil that has been refined from crude oil, or any synthetic oil, that has been used and as a result of such use is contaminated by physical or chemical impurities."

-24-

97. Pursuant to 40 C.F.R. § 279.22 and Utah Admin. R. R315-15-2.3, generators of used oil must, among other things, store used oil in containers that are in good condition and that are clearly marked and labeled "Used Oil."

98. During an April, 19, 1999 inspection, an EPA inspector observed that MagCorp had failed to label a 500-gallon used oil tank, in violation of 40 C.F.R. § 279.22(c)(1) and Utah Admin. R. R315-15-2.3(c)(1).

99. MagCorp's failure to properly label an above-ground used oil tank, in violation of 40 C.F.R. § 279.22(c)(1) and Utah Admin. R. R315-15-2.3(c)(1), constitutes a violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $27,500 for the violation occurring on April 19, 1999.

### FOURTH CLAIM FOR RELIEF
(Illegal Treatment of Hazardous Waste)

100. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

101. RCRA sections 3005(a) and (e), 42 U.S.C. § 6925(a) and (e), 40 C.F.R. §§ 270.1(c) and § 270.71(a); and Utah Code Ann. § 19-6-108(3), Utah Admin. R. R315-3-3(m) - (n) (renumbered as R315-3-1.1(a) (2000)), R315-3-30(a) (renumbered as R315-3-7.2(a) (2000)), prohibit a person from treating hazardous waste without first obtaining a permit or interim status.

102. MagCorp manages Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction Burner Waste and High Energy Scrubber Waste at its facility. EPA sampling shows that each of these are hazardous wastes.

103. RCRA Section 1004(34) and 40 C.F.R. §§ 260.10, 270.2 and Utah Admin. R. R315-1-1(b), R315-1-1(d), generally define treatment, when used in connection with hazardous waste, as including any method, technique, or process designed to change the physical, chemical, or biological character or composition of the hazardous waste so as to render the waste nonhazardous, amenable for storage, or reduced in volume.

104. By disposing liquid hazardous wastes for at least the last five years in its Chlorine Plant Ditch, Central Ditch, and Red River/400-Acre Pond, MagCorp is using evaporation, and/or seepage into the groundwater, to reduce their volume.  These activities constitute treatment.

105. By commingling its non-exempt and exempt hazardous liquid wastes for at least the last five years in its Chlorine Plant Ditch, Central Ditch, and/or Red River/400-Acre Pond, MagCorp is diluting hazardous wastes at its facility, which activity constitutes treatment pursuant to 40 C.F.R. § 268.3 and Utah Admin. R. R315-13-1.

106. MagCorp did not seek or obtain a permit from EPA and/or the State of Utah to treat hazardous waste at its facility, nor does MagCorp qualify for interim status.

107. Each day MagCorp treats or has treated each hazardous waste without a permit or without qualifying for interim status in its Chlorine Plant Ditch, Central Ditch, Red River/400-Acre Pond constitutes a separate violation of RCRA Section 3005, 42 U.S.C. § 6925, 40 C.F.R. §§ 270.1(c) and 270.71(a), and Utah Code Ann. § 19-6-108, Utah Admin. Rule R315-3-3(m) - (r) (renumbered as R315-3-1.1(a) (2000)) and R 315-3-30(a) (renumbered as R315-3-7.2(a) (2000)), for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30,

1997, in accordance with Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (g).

## FIFTH CLAIM FOR RELIEF
### (Illegal Disposal of Hazardous Waste)

108. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

109. RCRA Sections 3005(a) and (e), 42 U.S.C. § 6925(a) and (e), and 40 C.F.R. §§ 270.1(c) and 270.71(a); and Utah Code Ann. 19-6-108, Utah Admin. R. R315-3-3(m) - (r) (renumbered as R315-3-1.1(a) (2000)) and R315-3-30(a) (renumbered as R315-3-7.2(a) (2000)), prohibit a person from disposing hazardous without first obtaining a permit or interim status.

110. RCRA Section 1004(3) and 40 C.F.R. §§ 260.10 and 270.2 and Utah Admin. R. R315-1-1(b), R315-1-1(d), generally define disposal as  the discharge, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including groundwaters.

111. MagCorp disposes, and has for at least the last five years disposed, wastes that EPA sampling shows are hazardous, including Chlorine Plant Water Wash Column, in its Chlorine Plant Ditch.

112. MagCorp disposes, and has for at least the last five years disposed, wastes that EPA sampling shows are hazardous, including Chlorine Reduction Burner Waste, in its Central Ditch.

113. MagCorp disposes, and has for at least the last five years, disposed, wastes that EPA sampling shows are hazardous, including waste containing MagCorp's Pentapure Solids, and MagCorp's High Energy Scrubber Waste, in the Red River.

114. MagCorp disposes, and has for at least the last five years disposed, each of the above-listed hazardous wastes in the Red River/400-Acre Pond. EPA sampling of Pond contents shows that the Pond contains hazardous wastes.

115. MagCorp disposes, and has for at least the last five years disposed, Ferrous and Ferric Chloride Solids, which EPA sampling shows are hazardous, in its Landfill.

116. MagCorp's disposal of hazardous wastes in its Chlorine Plant Ditch, Central Ditch, Red River/400-Acre Pond, and Landfill constitutes disposal of hazardous waste without a permit or without qualifying for interim status.

117. MagCorp did not seek or obtain a permit from EPA or the State of Utah to dispose hazardous waste at its facility, nor does MagCorp qualify for interim status.

118. Each day MagCorp disposes or has disposed each hazardous waste without a permit or without qualifying for interim status in its Chlorine Plant Ditch, Central Ditch, the Red River/400-acre pond, and/or Landfill constitutes a separate violation of RCRA Section 3005, 42 U.S.C. § 6925, 40 C.F.R. §§ 270.1(c) and 270.71(a), and Utah Code Ann. § 19-6-108, Utah Admin. R. R315-3-3(m) - (r) (renumbered as R315-3-1.1(a) (2000)) and R315-3-30(a) (renumbered as R315-3-7.2(a) (2000)), for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997, in accordance with Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (g).

## SIXTH CLAIM FOR RELIEF
### (Failure to Comply with Standards for Treatment, Storage and Disposal of Hazardous Waste in Surface Impoundments)

-28-

119. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

120. MagCorp treats, stores, or disposes, and has for at least the last five years treated, stored or disposed, hazardous wastes in its Chlorine Plant Ditch, Central Ditch, and Red River/400-Acre Pond, each of which constitute a surface impoundment within the meaning of 40 C.F.R. § 260.10 and Utah Admin. R. R315-1-1(b).

121. RCRA Section 3004(o) and 40 C.F.R. §§ 264.220, 265.220; Utah Admin. R. R315-8-11.1, R315-7-18.1, prohibit MagCorp from treating, storing or disposing certain hazardous wastes in the Chlorine Plant Ditch, the Central Ditch, or the Red River/400-Acre Pond unless these units meet specified design requirements, including double liners, and groundwater monitoring.

122. The Chlorine Plant Ditch, Central Ditch, and Red River/400-Acre Pond are unlined, and do not have groundwater monitoring systems.

123. Each day which MagCorp owned and operated or owns and operates the Chlorine Plant Ditch, the Central Ditch, and/or the Red River/400-Acre Pond in violation of each of the above-specified requirements constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

### SEVENTH CLAIM FOR RELIEF
(Failure to Close Surface Impoundments)

124. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein

-29-

by reference.

125. Under 40 C.F.R. §§ 264.113(a) and 265.113(a) and Utah Admin. R. R315-8-7 and R315-7-14, a facility which has neither interim status nor a permit for its management of hazardous wastes in a surface impoundment is required to cease management of hazardous wastes in that impoundment, and close it within 90 days of the date upon which interim status or a permit was to be obtained.

126. MagCorp is, and has for at least the last five years been, required to obtain a permit or comply with interim status requirements to treat, store, and/or dispose Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction Burner Waste, and High Energy Scrubber Waste in the Chlorine Plant Ditch, the Central Ditch, and/or the Red River/400-Acre Pond.  MagCorp has failed to cease its management of Pentapure Solids, Chlorine Reduction Burner Waste, High Energy Scrubber Waste and Chlorine Plant Water Wash Column in its Chlorine Plant Ditch, Central Ditch, and/or the Red River/400-Acre Pond, or to close those units, in violation of 40 C.F.R. §§ 264.113(a) and 265.113(a) and Utah Admin. R R315-8-7 and R315-7-14.

127. Each day which MagCorp owns and operates or owned and operated the Chlorine Plant Ditch, the Central Ditch, and/or the Red River/400-Acre Pond without closing these units constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

## EIGHTH CLAIM FOR RELIEF

(Failure to Comply with Standards for Treatment, Storage
and Disposal of Hazardous Waste in Landfills)

128. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

129. MagCorp disposes, and has for at least the last five years disposed, Ferrous and Ferric Chloride Solids in its on-site industrial Landfill.

130. MagCorp's Landfill constitutes a "Landfill," within the meaning of 40 C.F.R. § 260.10 and Utah Admin. Code R. R315-1-1(b).

131. RCRA Section 3004(o) and 40 C.F.R. §§ 264.300 and 265.300; Utah Admin. R. R315.8-14.1 and R315-7-21.1, prohibit a person from treating, storing or disposing certain hazardous wastes in Landfills unless these units meet specified design requirements, including liners and leachate collection and removal systems.

132. MagCorp's Landfill is unlined, and has no leachate collection or removal system.

133. Each day MagCorp owned and operated or owns and operates its Landfill in violation of each of the above-specified requirements constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

## NINTH CLAIM FOR RELIEF
### (Illegal Land Disposal)

134. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

135. RCRA Section 3004(k), 42 U.S.C. § 6924(k) and 40 C.F.R. § 268.2(c); Utah Admin. R. R315-13-1, generally define "land disposal" as the placement of hazardous waste in or on the land, including, but not limited to, placement in a landfill or a surface impoundment.

136. MagCorp places, and has for at least the last five years placed, its Chlorine Plant Water Wash Column, which EPA sampling shows is hazardous, in its Chlorine Plant Ditch.

137. MagCorp places, and has for at least the last five years placed, its Chlorine Reduction Burner Waste, which EPA sampling shows is hazardous, in its Central Ditch.

138. MagCorp places, and has for at least the last five years placed, its Pentapure Solids and High Energy Scrubber Waste, which EPA sampling shows are hazardous, in the Red River.

139. MagCorp places, and has for at least the last five years placed, each of the above-listed hazardous wastes in the Red River/400-Acre Pond. EPA sampling of Pond contents shows that the Pond contains hazardous wastes.

140. MagCorp places, and has for at least the last five years placed, Ferrous and Ferric Chloride Solids, which EPA sampling shows is hazardous, in its Landfill.

141. MagCorp's Chlorine Plant Ditch, Central Ditch, Red River/400-Acre Pond, and/or Landfill constitute land-disposal units within the meaning of RCRA Section 3004(k), 42 U.S.C. § 6924(k) and 40 C.F.R. § 268.2(c); Utah Admin. R. R315-13-1.

142. RCRA Section 3004(m), 42 U.S.C. § 6924(m) and 40 C.F.R. §§ 268.40 to 268.44; Utah Admin. R. R315-13-1, prohibit certain hazardous wastes from being land-disposed unless specified treatment requirements are met.

143. MagCorp is and has been prohibited from land-disposing its Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction Burner Waste, High Energy Scrubber

-32-

Waste and Ferrous and Ferric Chloride Solids, unless these wastes were first pre-treated to meet specified treatment requirements set forth in 40 C.F.R. § 268 and Utah Admin. R. R315-13.

144.  MagCorp has not pre-treated its Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction Burner Waste, High Energy Scrubber Waste or Ferrous or Ferric Chloride Solids before land-disposing them in its Ditches, 400-Acre Pond, and Landfill.

145. Each day which MagCorp illegally land-disposes or has illegally land-disposed each hazardous waste by failing to treat each to meet specified treatment requirements constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

### TENTH CLAIM FOR RELIEF
(Violation of Groundwater Monitoring Requirement Applicable to Owner/Operators)

146. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

147. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide that an owner or operator of a facility which treats, stores or disposes of hazardous waste is subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8, R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R. §§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34 (2000)).

148.  For at least the last five years, MagCorp has accumulated hazardous waste for more

-33-

than ninety days without an extension. Thus, MagCorp is subject to regulation under 40 C.F.R. Parts 264 and/or 265 and 270, and Utah Admin. R. R315-8 and/or R315-7 and R315-3.

149. Pursuant to 40 C.F.R. §§ 264.1, 264.90, 265.1 and 265.90, and Utah Admin. R. R315-8-1, R315-8-6.1, R315-7-8, and R315-7-13.1, as the owner/operator of a facility that treats, stores or disposes of hazardous waste, MagCorp is required to, *inter alia*, implement a groundwater monitoring program to detect, characterize, and respond to releases from all solid waste management units and specified regulated units, including surface impoundments and landfills, into the uppermost aquifer underlying the impoundments.

150. MagCorp treats, stores or disposes, and for at least the last five years has treated, stored or disposed, its Chlorine Plant Water Wash Column, which EPA sampling shows is hazardous, in its Chlorine Plant Ditch.

151. MagCorp treats, stores or disposes, and for at least the last five years has treated, stored or disposed, its Chlorine Reduction Burner Waste, which EPA sampling shows is hazardous, in its Central Ditch.

152. MagCorp treats, stores or disposes, and for at least the last five years has treated, stored or disposed, its Pentapure Solids and High Energy Scrubber Waste, which EPA sampling shows are hazardous, in the Red River.

153. MagCorp treats, stores or disposes, and for at least the last five years has treated, stored or disposed, each of the above-mentioned hazardous wastes in the Red River/400-Acre Pond. EPA sampling of Pond contents shows that the Pond contains hazardous wastes.

154. MagCorp disposes, and has for at least the last five years disposed, spent Ferrous and Ferric Chloride Solids, which EPA sampling shows is hazardous, in its Landfill

155. The Chlorine Plant Ditch, Central Ditch, and Red River/400-Acre Pond are surface impoundments, within the meaning of 40 C.F.R. §260.10 and Utah Admin. R. R315-1-1(b).

156. MagCorp's Landfill meets the definition of a landfill, within the meaning of 40 C.F.R. §260.10 and Utah Admin. R. R315-1-1(b).

157. Until 1986, MagCorp disposed hazardous waste in its 1200-acre pond. MagCorp disposes, and for at least the last five years disposed, hazardous constituents in its sumps and smut piles. The smut piles, sumps, and units into which MagCorp disposes and disposed hazardous waste constitute solid waste management units, and are subject to the corrective action requirements set forth in RCRA § 3004(u), (v), 40 C.F.R. § 264.552 - 552; Utah Code Ann. §19-6-105(d), and Utah Admin. R. R315-8-21, and R 315-7-8.1(b).

158. For at least the last five years, MagCorp has not had a groundwater monitoring program.

159. Each day which MagCorp owned and operated or owns and operates its facility without the required groundwater monitoring program constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

## ELEVENTH CLAIM FOR RELIEF
### (Violation of Requirement that Owner/Operators File Closure Plans)

160. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

-35-

161. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide that an owner or operator of a facility which treats, stores or disposes of hazardous waste is subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8, R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R. §§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34 (2000)).

162. For at least the last five years, MagCorp has accumulated hazardous wastes for more than ninety days without an extension.  Thus, MagCorp is subject to 40 C.F.R. Parts 264 and/or 265 and 270, and Utah Admin. R.  R315-8 and/or R315-7 and R315-3.

163. Pursuant to 40 C.F.R. §§ 264.1, 264.112, 265.1 and 265.112 and Utah Admin. R. R315-8-1, R315-8-7, R315-7-8, R315-7-14, as the owner/operator of a facility that treats, stores or disposes hazardous wastes, MagCorp is and has been required to have a written closure plan or plans meeting the requirements of 40 C.F.R. §§ 264.112(b) and 265.112(b) and Utah Admin. R. R315-8-7 and R315-7-14.

164. MagCorp treats, stores or disposes, and for at least the last five years has treated, stored or disposed, Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction Burner Waste, High Energy Scrubber Waste, and Ferrous and Ferric Chloride Solids, each of which EPA sampling shows are hazardous, at its facility.

165. MagCorp does not have and for at least the last five years has not had a written closure plan or plans for its facility.

166. Each day which MagCorp owned and operated or owns and operates its facility without the required closure plan constitutes a separate violation of the regulations, for which

-36-

MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of

noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500

per day for each such violation which occurred after January 30, 1997.

## TWELFTH CLAIM FOR RELIEF
(Violation of Requirement that Owner/Operators Provide Financial Assurances)

167. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein

by reference.

168. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide

that an owner or operator of a facility which treats, stores or disposes of hazardous waste is

subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8,

R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R.

§§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34

(2000)).

169. For at least the last five years, MagCorp has accumulated hazardous wastes for more

than ninety days without an extension.  Thus, MagCorp is subject to 40 C.F.R. Parts 264 and/or

265 and 270, and Utah Admin. R.  R315-8 and/or R315-7 and R315-3.

170. MagCorp treats, stores or disposes and for at least the last five years has treated,

stored or disposed, Pentapure Solids, Chlorine Plant Water Wash Column, Chlorine Reduction

Burner Waste, High Energy Scrubber Waste, and Ferrous and Ferric Chloride Solids, each of

which EPA sampling shows are hazardous, at its facility.

171. Pursuant to 40 C.F.R. §§ 264.1, 264.140, 265.1, and 265.140 and Utah Admin. R.

R315-8-1, R315-8-8, R315-7-8.1(b) and R315-7-15, as the owner/operator of a facility that

treats, stores or disposes hazardous waste, as of October 24, 1984, MagCorp was required to provide financial assurance for closure and post-closure care for its facility.

172. 40 C.F.R. §§ 264.142, 265.142 and Utah Admin. R. R315-8-8 and R315-7-15 require that the owner or operator of a facility have a detailed written estimate, in current dollars, of the cost of closing the facility at the point in the facility's active life when the closure would be most expensive.

173. 40 C.F.R. §§ 264.143, 265.143 and Utah Admin. R. R315-8-8 and R315-7-15 require that the owner or operator of the facility establish financial assurance for closure of the facility in accordance with the written estimate discussed above.

174. MagCorp has never provided assurance that it can finance closure of the facility if closure becomes necessary.

175. Each day which MagCorp owned or operated or owns and operates its facility without providing the required financial assurances constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

## THIRTEENTH CLAIM FOR RELIEF
### (Violation of Requirement that Owner/Operators Minimize Releases)

176. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

177. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide

that an owner or operator of a facility which treats, stores or disposes of hazardous waste is subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8, R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R. §§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34 (2000)).

178. For at least the last five years, MagCorp has accumulated hazardous wastes for more than ninety days without an extension.  Thus, MagCorp is subject to 40 C.F.R. Parts 264 and/or 265 and 270, and Utah Admin. R.  R315-8 and/or R315-7 and R315-3.

179. 40 C.F.R. §§ 264.31, 265.31 and Utah Admin. R. R315-8-3.2, R315-7-10.2 require owners and operators of hazardous waste management facilities, *inter alia*, to maintain and operate their facilities to minimize the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water which could threaten human health or the environment.

180. In 1986, MagCorp's 1200-Acre surface impoundment washed out, and into the Great Salt Lake.  For at least the last five years, MagCorp has not operated its 400-Acre Pond, or other solid waste management units, in a manner so as to prevent future migration.

181. Each day which MagCorp owned and operated or owns and operates its facility without minimizing the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30,

1997.

## FOURTEENTH CLAIM FOR RELIEF
(Violation of Requirement that Owner/Operators Maintain Operating Records)

182. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

183. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide that an owner or operator of a facility which treats, stores or disposes of hazardous waste is subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8, R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R. §§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34 (2000)).

184. For at least the last five years, MagCorp has accumulated hazardous wastes for more than ninety days without an extension. Thus, MagCorp is subject to 40 C.F.R. Parts 264 and/or 265 and 270, and Utah Admin. R. R315-8 and/or R315-7 and R315-3.

185. Pursuant to 40 C.F.R. §§ 264.1, 264.73, 265.1 and 265.73 and Utah Admin. R. R315-8-1, R315-8-5.3, R315-7-8.1(b), and R315-7-12.4, as of October 10, 1984, MagCorp or its predecessor were and are required to keep written operating records that, *inter alia*, describe the quantity of each hazardous waste at the facility, the location of each, the results of waste determinations, results of inspections, and sampling and analytical results.

186. For at least the last five years, MagCorp has failed to maintain operating records.

187. Each day which MagCorp owned and operated or owns and operates its facility without maintaining the required operating records constitutes a separate violation of the

regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

## FIFTEENTH CLAIM FOR RELIEF
(Violation of Requirement that Owner/Operators Analyze Hazardous Wastes)

188. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

189. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide that an owner or operator of a facility which treats, stores or disposes of hazardous waste is subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8, R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R. §§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34 (2000)).

190. For at least the last five years, MagCorp has accumulated hazardous wastes for more than ninety days without an extension.  Thus, MagCorp is subject to 40 C.F.R. Parts 264 and/or 265 and 270, and Utah Admin. R.  R315-8 and/or R315-7 and R315-3.

191. 40 C.F.R. §§ 264.13 and 265.13 and Utah Admin. R. R315-8-2.4 and R315-7-9.4, generally require that an owner or operator of a hazardous waste facility analyze hazardous waste before treating, storing, or disposing it, as often as necessary to ensure that the analyses are accurate.

192. For at least the last five years, MagCorp has not had a formal waste monitoring or

sampling program.

193. Each day for which MagCorp owned and operated or owns and operates its facility without a waste analysis program constitutes a separate violation of the regulations, for which MagCorp is subject to injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each such violation which occurred prior to January 30, 1997, and $27,500 per day for each such violation which occurred after January 30, 1997.

## SIXTEENTH CLAIM FOR RELIEF
(Failure to Comply with General Facility Standards Applicable to Owners/Operators)

194. Plaintiff realleges paragraphs 1 through 71, inclusive, which are incorporated herein by reference.

195. 40 C.F.R. §§ 264.1 and 265.1, Utah Admin. R. R315-8-1, R315-7-8.1(b), provide that an owner or operator of a facility which treats, stores or disposes of hazardous waste is subject to the requirements of 40 C.F.R. Parts 264, 265 and 270, Utah Admin. R. R315-8, R315-7 and R315-3, unless, *inter alia*, the person complies with the requirements of 40 C.F.R. §§ 262.34(a) and Utah Admin. R. R315-5-10 (renumbered as Utah Admin. R. R315-5-3.34 (2000)).

196. For at least the last five years, MagCorp has accumulated hazardous wastes for more than ninety days without an extension. MagCorp is violating or has violated the requirements of 40 C.F.R. Parts 264 and/or 265 and 270, and Utah Admin. R. R315-8 and/or R315-7 and R315-3, applicable to owner/operators, including the following:

a. Preventing Entry of Persons or Livestock

197. 40 C.F.R. §§ 264.14 and 265.14 and Utah Admin. R. R315-8-2.5 and R315-7-9.5,

generally require that an owner or operator of a hazardous waste facility prevent the entry of persons or livestock onto the active portion of his facility unless he can demonstrate that the persons or livestock will not come in contact with hazardous waste in such portion.

198. MagCorp has acknowledged that it has granted permission for cattle grazing on its property. MagCorp has never demonstrated that livestock will not come in contact with hazardous waste in active portions of its facility.

### b. 100-Year Floodplain

199. 40 C.F.R. §§ 264.18(b) and Utah Admin. R. R315-8-2.9, generally require that a facility located in a 100-year floodplain be designed, constructed, operated, and maintained to prevent washout of any hazardous waste by a 100-year flood.

200. In 1986, the 1200-acre impoundment was washed out, when the waters of the Great Salt Lake rose. The new 400-Acre impoundment is located next to the 1200-acre impoundment, in a 100-year floodplain.

201. For at least the last five years, MagCorp has failed to design, construct, maintain and operate the new 400-acre impoundment so as to prevent washout of any hazardous waste by a 100-year flood.

### c. Construction Quality Assurance Program

202. 40 C.F.R. §§ 264.19 and 265.19 and Utah Admin. R. R315-8-2.10 and R315-7-9.10, generally require a construction quality assurance program for all surface impoundments, waste piles, and landfill units that will include, *inter alia*, observations, inspections, tests and measurements sufficient to ensure structural stability and integrity of such units, and proper construction of liners, leachate collection and removal systems, and leak detection systems for

-43-

such units.  The regulations also prohibit, *inter alia*, receipt of waste in such units until the owner

or operator has submitted a certified construction quality assurance program to EPA.

203. MagCorp has never provided quality assurance for its units which receive hazardous

waste.

204. MagCorp's failure to provide quality assurance for its units which receive hazardous

waste constitutes a separate violation of the regulations, for which MagCorp is subject to

injunctive relief, and for civil penalties not to exceed $25,000 per day of noncompliance for each

such violation which occurred prior to January 30, 1997, and $27,500 per day for each such

violation which occurred after January 30, 1997.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully prays that this Court:

a.  Assess civil penalties against MagCorp, in an amount not to exceed Twenty Five Thousand Dollars ($25,000) for each day of each violation prior to January 30, 1997 and not to exceed Twenty Seven Thousand and Five Hundred Dollars ($27,500) for each day of each violation after January 30, 1997 of RCRA and Utah hazardous waste regulations as alleged in this complaint;

b.  Grant injunctive relief to bring MagCorp into compliance with RCRA and all applicable environmental laws, and to submit a plan with enforceable schedules to segregate and separately manage Bevill-excluded wastes; properly manage, treat, store, dispose, or recycle non-excluded wastes; characterize the nature and extent of releases; and perform site-wide corrective action for all solid waste management units;

c.  Pierce the corporate veil to hold liable Metals, Group, the Trusts, D'Atri, Rennert, and Unidentified Trustees for the debts and liabilities of MagCorp; and

d.  Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice