IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MAGNESIUM CORPORATION OF AMERICA, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER RE: MOTION TO COMPEL<br><br>Case No: 2:01-CV-00040 DB<br><br>District Judge Dee Benson<br><br>Magistrate Judge David Nuffer |

The United States has filed a motion under Rule 37(a) of the Federal Rules of Civil Procedure to compel responses to its discovery requests from Defendants The Renco Group, Inc. ("Renco"), Ira Leon Rennert, and the Ira Leon Rennert Revocable Trust (collectively the "non-USM defendants").[1] For the reasons set forth below, the court denies the motion in part and grants it in part.

### BACKGROUND

The United States commenced this action in 2001 alleging that Magnesium Corporation of America ("MagCorp") violated certain provisions of the Resource Conservation and Recovery Act of 1976 ("RCRA")[2] at its magnesium production facility (the "Facility") in Rowley, Utah.

---

[1] United States of America's Motion to Compel Responses by Renco Defendants to the United States' Discovery Requests to the Defendants in Phase I of the Consolidated Case ("Motion to Compel"), docket no. 242, filed April 4, 2006.

[2] 42 U.S.C. §§ 6901-6992k.

The complaint also alleged that MagCorp's' corporate parents, the non-USM defendants, were indirectly liable for MagCorp's acts and omissions under a veil-piercing theory.

On July 3, 2001, the court entered a stipulated order, bifurcating trial and discovery into two phases:

> the first phase ("Phase I") addressing MagCorp's alleged liability at its Rowley, Utah facility for alleged violations of hazardous waste management requirements, and relief to be awarded for such alleged violations, including penalties and injunctive relief; the second phase ("Phase II") addressing the non-MagCorp Defendants' alleged liability for the acts or omissions of MagCorp under a theory of veil-piercing.[3]

Thereafter, the United States and MagCorp began Phase I fact discovery, providing initial disclosures under Rule 26(a)(1), and serving and responding to numerous requests for production, interrogatories, requests for admissions, and taking numerous depositions. The non-USM defendants did not participate in this discovery phase.[4]

On August 2, 2001, MagCorp filed a petition for bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York.[5] Later, in June 2002, the Bankruptcy Court approved the sale of MagCorp's assets to US Magnesium LLC ("USM"), a wholly owned subsidiary of Defendant The Renco Group, Inc, which was formed for the express purpose of

---

[3] Order Granting Joint Motion for Order to Bifurcate Discovery and Trial of Liability and Veil-Piercing at 2, docket no. 26, filed July 5, 2001.

[4] Memorandum of Law of Defendants Renco, the Rennert Trust and Ira Rennert in Opposition to United States' Motion to Compel Answers to United States' Discovery Requests to Defendants in Phase I of the Consolidated Case ("Opposition Memorandum") at 7, docket no. 250, filed under seal, April 25, 2006.

[5] Notice of Bankruptcy and of Automatic Stay, docket no. 27, filed August 9, 2001.

buying MagCorp's assets.[6]  Subsequently, on October 3, 2002, this court granted the United States leave to file an amended complaint adding USM as a defendant.[7]  On October 28, 2002, the United States filed a Motion for Leave to File a Second Amended Complaint to add Defendant Renco Group (previously only a veil-piercing defendant) as a direct defendant as an operator of the Rowley facility.[8]  Pursuant to a stipulation by the parties, the court granted the motion on December 4, 2002.[9]

On May 12, 2005, the United Stated commenced a second action against USM and the non-USM defendants alleging violations of the Toxic Substances Control Act ("TSCA").[10]  On June 3, 2005, pursuant to a stipulation by the parties, the court consolidated the RCRA and TSCA cases.[11]

## MOTION TO COMPEL

On February 6, 2006, the United States served discovery requests on the non-USM defendants.  Although the non-USM defendants responded to the requests on March 6, 2006, the

---

[6] Memorandum in Support of United States of America's Motion to Compel Answers to the United States' Discovery Requests to Defendants in Phase I of the Consolidated Case ("Supporting Memorandum") at 2; docket no. 243, filed under seal, April 4, 2006; Sadlowski Deposition at 36, attached as Exhibit 1 to Supporting Memorandum.

[7] Order Granting Joint Motion and Stipulation to Amending Complaint, docket 99, filed October 4, 2002.

[8] Motion for Leave to File Second Amended Complaint, docket no. 107, filed October 28, 2002; Memorandum in Support of Motion for Leave to File Second Amended Complaint at 4, docket no. 108, filed October 28, 2002.

[9] Order Granting Leave to File Second Amended Complaint and Amending Order to Bifurcate Discovery and Trial, docket no. 126, filed December 5, 2002.  See stipulation, docket no. 125, filed December 2, 2002.

[10] 15 U.S.C. §§ 2601-2692, 2616. See Complaint, case no. 2:05CV423 TC, docket no. 1, filed May 12, 2005.

[11] Stipulation and Order Re:  Consolidation and Stay, Docket no. 197, filed June 6, 2005.

United States considered the responses to be inadequate. The parties then communicated with each other and successfully resolved some, but not all, of the discovery issues.

On April 4, 2006, the United States filed its motion to compel responses to its February 6, 2006 discovery requests from the non-USM defendants. Specifically, the United States asks the court to compel the non-USM defendants to fully respond to Interrogatories Nos. 1, 3-12, and 14-21, and Requests for Production 1-30 and 32.[12] In opposition to the motion to compel, the non-USM defendants assert that there are only two disputes remaining to be decided on this motion: (1) Whether the United States is entitled to receive the non-USM defendants' sensitive financial records and tax returns in Phase I of this litigation; and (2) whether the non-USM defendants should "be required to prepare a privilege log listing all the privileged documents that its counsel have prepared or received since this lawsuit began more than five years ago."[13] In its reply memorandum, the United States does not dispute the Defendants' characterization of the issues.[14] Thus, the court will address those two issues.

## DISCUSSION

**A. Disclosure of Financial Records and Tax Returns**

The United States seeks financial information and tax returns of Defendant The Renco Group. In support of its motion, the United States contends that information concerning the

---

[12] Motion to Compel at 1; Supporting Memorandum at 22.

[13] Opposition Memorandum at 2.

[14] Reply Brief of the United States of America in Support of the United States' Motion to Compel Answers and Responses by Renco Defendants to United States' Discovery Requests ("Reply"), docket no. 253, filed May 8, 2006.

financial wherewithal of USM and its parents, and the financial relationship between them, is relevant in determining the appropriate penalty to be imposed against USM for the alleged RCRA violations.[15]  The United States emphasizes that in seeking this information, it is not trying to establish the *liability* of the non-USM defendants.  Rather, it is seeking information concerning USM's financial resources.[16]

In opposition, the non-USM defendants contend that the court should strike the United States' requests for financial information and tax returns for several reasons.  First, they assert that the records sought constitute "confidential commercial information" which is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure.  They contend that the United States has not made the necessary showing of relevance and necessity to require the disclosure of the information.[17]  Second, they argue that the United States' requests are premature because (1) the United States has not yet established USM's liability under RCRA, and (2) USM has not raised its inability to pay as a mitigating factor in determining the amount of any penalty to be assessed against it.[18]

Finally, the non-USM defendants argue that the United States is not entitled to Renco's financial records and tax returns in Phase I of the discovery proceedings because they are irrelevant to the Phase I proceedings, even if the United States were to establish USM's RCRA

---

[15] Supporting Memorandum at 4-5.

[16] *Id*. at 5-6.

[17] Opposition Memorandum at 14-18.

[18] *Id*. at 18-21.

liability, and USM were to invoke inability to pay as a mitigating factor.[19] In support of this last argument, the non-USM defendants cite *United States v. Bestfoods*[20] in which the Supreme Court held that absent corporate veil-piercing, a parent corporation cannot be held liable for operating a polluting facility owned or operated by a subsidiary.[21] A corporate parent may be directly liable, however, as an operator of the facility if it actively participated in, or exercised control over the operations of the facility.[22]

The United States responds that *Bestfoods* is inapposite, and does not prohibit the court from considering Renco's financial condition in determining the amount of any penalty to be assessed against USM. The United States argues that *Bestfoods* holds that a corporate parent may itself only be held liable for the operations of its subsidiary if the corporate veil is pierced or if its actions and control render it directly liable as an operator of the facility. The United States again stresses out that at this stage in the litigation, it is not trying to establish the non-USM defendants' *liability*. Instead it is seeking evidence that will shed light on USM's ability to pay.[23]

The United States contends that another line of cases makes clear that the financial resources of the parent are highly relevant to the subsidiary's ability to pay, whether or not the parents themselves are liable. In particular, the United States relies on *United States v.*

---

[19] *Id.* at 21-29.

[20] 524 U.S. 51 (1998). *Bestfoods* dealt with another environmental statute, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601-9675.

[21] *Bestfoods*, 524 U.S. at 54, 61-64.

[22] *Id.* at 54, 64-67.

[23] Reply at 4.

*Municipal Authority of Union Township*[24] in which the Third Circuit upheld the district court's consideration of a corporate parent's finances in assessing a penalty on its subsidiary.[25]  As Defendants point out, however, most of the cases cited by the United States were decided before the Supreme Court's decision in *Bestfoods*, and those that were decided after *Bestfoods* do not make any reference to *Bestfoods*.  Indeed, *Union Township*, the United States' primary case, was decided just six weeks after *Bestfoods*, and fails to mention *Bestfoods*.  Other courts have held, in the context of assessing punitive damages, that a parent's resources may not be considered in determining the amount of punitive damages to be imposed against a subsidiary.[26]

In support of its position, the United States asserts that this court's Bifurcation Order "is clear that subsidiary liability, penalty and injunctive relief will *all* be the subject of Phase I discovery and trial."[27]  Thus, the United States is required "to take discovery on and try the issue of liability simultaneously with the issues of penalty and injunctive relief."[28]  In opposition, the non-USM defendants state that allowing the United States to discover the financial health of the

---

[24]150 F.3d 259 (3d Cir. 1998).

[25]*Id.* at 268-69.

[26]*See e.g.*, *United Techs. Corp. v. Am. Home Assurance Co.*, 118 F. Supp. 2d 174, 180-81 (D. Conn. 2000)(citing *Bestfoods* in refusing to base the amount of punitive damages on parent's net worth where the corporate veil had not been pierced and parent was not a party); *Continental Trend Res., Inc. v. Oxy USA, Inc.*, 810 F. Supp. 1520, 1533 (W.D. Okla. 1992)(noting that "[t]he financial worth of a parent corporation is generally irrelevant in assessing punitive damages on a subsidiary unless the corporate veil is pierced," but concluding that the subsidiary itself had pierced its parent's veil), *aff'd in relevant part*, 44 F.3d 1465 (10th Cir. 1995), *vacated on other grounds*, 517 U.S. 1216 (1996).

[27]Reply at 2.

[28]*Id.* at 2-3.

parent at this point in the litigation would effectively nullify the Bifurcation Order by permitting "the sort of back-door veil-piercing the Supreme Court proscribed in *Bestfoods*."[29]

"Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."[30] As discussed, the Bifurcation Order, as presently constituted, provides for determination of the appropriate penalty to be imposed against USM in Phase I of the proceedings. The court believes, however, that *Bestfoods* illustrates the logic in altering the sequence of discovery and trial as presently set forth in the Bifurcation Order. Thus, in the interest of efficient case management, it would be more logical and economical to postpone the determination of any penalty to be imposed until after liability has been determined with respect to all of the defendants, essentially trifurcating discovery and trial. If the United States establishes the liability of USM in the first phase, then the proceedings will move to the second phase in which the United States will attempt to establish the liability of the non-USM defendants. After the liability issues are resolved, the United States may then conduct any discovery (which has not been conducted to date) relevant to any penalty to be imposed. Under this scheme, should the United States fail to establish the liability of any of the defendants, the penalty phase will be unnecessary, thus saving substantial costs of litigation. The court recognizes that some discovery has already been conducted regarding the financial condition of the USM defendants; and that may continue, but there shall be no discovery regarding Renco's financial records and tax returns in the current phase of the discovery proceedings.

---

[29] Opposition Memorandum at 25.

[30] *Crawford-El v. Britton* 523 U.S. 574, 598 (1998).

**B. Privilege Log**

The non-USM defendants state that with the exception of financial records and tax returns, they have agreed "to produce any non-privileged information responsive to [the United States'] requests that has not already been, or is not in the process of being, produced by USM."[31] The non-USM defendants state that except for the United States' requests for financial records and tax returns, they "do not believe that they have any responsive documents other than what counsel for the non-USM defendants may have received from Parsons Behle & Latimer (outside counsel for MagCorp and, later, USM), with the exception of documents responsive to Request 5."[32] They have agreed

> (1) to confirm that whatever responsive, non-privileged documents they possess have already been produced to the United States by USM or MagCorp, or are in the process of being produced to the United States by USM, and (2) to the extent non-privileged documents relevant to the United States' RCRA and TSCA claims against USM or Mag Corp do exist and have not already been produced or are not in the process of being produced by USM, to produce them.[33]

In addition, the non-USM defendants state that they "have agreed to prepare a log for responsive, privileged documents that were generated prior to the United States' commencement of this lawsuit."[34]

---

[31] Opposition Memorandum at 13.

[32] Opposition Memorandum at 29.

[33] *Id; see* e-mail from Michael Gordon to Bicky Corman, dated April 1, 2006, attached as Exhibit A to Declaration of Michael M. Gordon ("Gordon Declaration"), Ex. 2 to docket no. 251, filed under seal, April 25, 2006.

[34] Opposition Memorandum at 30; Gordon Decl. ¶ 4.

The non-USM defendants state that despite the aforementioned agreements, the United States wants the court to require them to prepare a privilege log listing every document generated or received by them as to which they claim privilege. The non-USM defendants assert that this demand "is unreasonable, unduly burdensome and would serve no legitimate purpose."[35] They explain that since the commencement of this action in January 2001, counsel for the various defendants have generated and received thousands of privileged documents concerning the defense of this litigation.[36] The non-USM defendants state, however, that for documents generated during the course of this lawsuit, they are willing to provide information similar to that required by the court in *SEC v. Thrasher*.[37] This information would include: "(1) the time period encompassed by the documents withheld, (2) a list of the individuals who authored, received or were copied on the documents, and (3) a representation by counsel of the privileged nature of the documents."[38] The non-USM defendants state that other courts have followed this same approach.[39]

The United States responds that Defendants' two offers regarding a privilege log are both inadequate. First, the United States is concerned that documents have been generated since 2001 that do not "technically 'concern the defense of this litigation,'" but that are nevertheless relevant

---

[35] Opposition Memorandum at 30.

[36] *Id.*; Gordon Declaration ¶ 9.

[37] No. 92 CIV. 6987 (JFK), 1996 WL 125661 (S.D.N.Y. Mar. 20 1996).

[38] Opposition Memorandum at 31 (citing *Thrasher*, 1996 WL 125661 at *2).

[39] Opposition Memorandum at 31 (citing *Caliper Techs., Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 563 (N.D. Cal. 2003)).

to this litigation. The United States cites as an example, documents generated in the course of Renco's investigation and decision to submit a bid to buy MagCorp's assets.[40]

Second, regarding the non-USM defendants' agreement to confirm that all responsive, non-privileged pre-2001 documents have been produced or will be produced, the United States asserts that this agreement is premised on Defendants' belief that they do not possess any responsive documents other than those received from Parsons Behle & Latimer, other than certain specified documents. The United States is concerned that the non-USM defendants may in fact possess other documents. The United States explains:

> Many Renco Group employees (including Mr. Rennert) have conducted monthly visits of the facility; have guaranteed loans on behalf of the facility; have issued bonds guaranteed by the facility; and have approved facility expenditures, projects, expansions and the like, all of which decisions have environmental ramifications. Accordingly, it seems likely that Renco Group employees generated documents in conjunction with their sixteen-year interaction with the facility, and that those would be in their possession, and not that of Parsons. Thus, the Renco Defendants should search their own files, or explain why they possess nothing responsive beyond that which Parsons provided their counsel.[41]

The court assumes that when the non-USM defendants represent that they will produce all responsive, non-privileged documents, that they have searched, or will search, their files to determine whether such documents exist[42]. In completing their responses to the United States' discovery requests, they should explain why they possess no responsive documents beyond those provided to their counsel by Parsons, if that is the case.

---

[40]Reply at 10.

[41]*Id.* at 10-11.

[42]Opposition Memorandum at 29.

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party withholding documents on a claim of privilege to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  Although a privilege log typically "must identify each document and provide basic information, including the author, recipient, date and general nature of the document, . . . courts retain some discretion to permit less detailed disclosure in appropriate cases."[43]  Thus, in appropriate circumstances the court may permit a party to provide summaries of the withheld documents by category or otherwise limit disclosure.[44]  Such circumstances include cases where "(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."[45]

In this case, compilation of a detailed privilege log identifying each document generated since 2001 undoubtedly would be an expensive and time-consuming undertaking since it is undisputed that these documents number in the thousands.  Further, it seems clear that most of the documents at issue would be protected from disclosure by the work product privilege, the attorney-client privilege, or the joint defense privilege.  Also, Defendants contend that preparation of a detailed log would likely cause the disclosure of privileged information

---

[43] *Thrasher*, 1996 WL 125661, at *1.

[44] *Id.*

[45] *Id.*

concerning their litigation strategy, and issues that have been discussed by defendants in connection with their defense strategy.[46]  The *Thrasher* court recognized that the governing rules permit less detailed disclosure "if detailed disclosure would in effect, reveal the very information that may be privileged."[47]

In its reply memorandum, the United States commendably has agreed to allow the non-USM defendants to group privilege log entries.[48]  Accordingly, the non-USM defendants will be required to provide a privilege log for documents generated since the institution of this lawsuit, grouping the entries by category.

## ORDER

The Bifurcation Order previously entered in this case is modified to provide that discovery and trial will be conducted in three phases:  (1) the liability of MagCorp/USM and the financial condition of the USM defendants, (2) the liability of the non-USM defendants, and (3) all remaining discovery regarding the penalty, if any, to be imposed, including the currently suspended discovery regarding Renco's financial records and tax returns.  The United States' Motion to Compel is DENIED as to requests for financial and tax information.

The non-USM defendants have agreed to produce all responsive documents as to which no privilege is claimed.  In addition, they have agreed to prepare a detailed privilege log for documents generated prior to the filing of this lawsuit.

---

[46] Opposition Memorandum at 30-31; Gordon Declaration ¶ 12.

[47] *Thrasher*, 1996 WL 125661, at *1.

[48] Reply at 11.

For documents generated subsequent to the institution of this action, the parties have agreed that a privilege log consisting of grouped entries consistent with the *Thrasher* opinion is acceptable. Accordingly, for those documents generated or received since the commencement of this lawsuit, the non-USM defendants are directed to prepare a document providing the following information: (1) the time period encompassed by the withheld documents, (2) a list of the authors, recipients, and those copied on the documents, and (3) a representation by counsel as to the privileged nature of the documents.

June 14, 2006.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge