IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MAGNESIUM CORPORATION OF AMERICA, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER RE:  MOTION TO COMPEL**<br><br>Case No:  2:01-CV-40 DB<br><br>District Judge Dee Benson<br><br>Magistrate Judge David Nuffer |

Plaintiff United States filed a motion under Rule 37(a) of the Federal Rules of Civil Procedure to compel Defendant US Magnesium LLC ("USM" or "USMag") to respond fully to the United States' February 6, 2006 Discovery Requests as modified by agreement of the parties.[1]  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

This case is a consolidation of two separate complaints filed by the United States concerning the creation and illegal disposal of dangerous wastes at the Rowley, Utah, magnesium production facility presently owned by USM.  The first complaint was filed under the Resource Conservation and Recovery Act ("RCRA") against Magnesium Corporation of America ("MagCorp"), which at that time owned the Rowley facility.  That complaint, which also names MagCorp's parents as defendants, seeks to compel MagCorp to comply with federal

---

[1]United States of America's Motion to Compel Answers by US Magnesium LLC to the United States' Discovery Requests to Defendants in Phase I of the Consolidated Case, Docket No. 255, filed May 31, 2006.

and state hazardous waste management requirements, a penalty for violations, and an injunction

to remedy harm caused by past violations and to prevent future violations from occurring.  The

second complaint was filed under the Toxic Substances Control Act ("TSCA") against USM, the

present owner of the facility, and its parents, which are essentially the same as Magcorp's.  It

seeks cessation of USM's alleged illegal manufacture of polychlorinated biphenyls ("PCBs"),

and cleanup of PCBs allegedly dispersed throughout the facility.[2]

In its motion, the United States seeks to compel USM to supplement its responses to the

United States' February 6, 2006 Discovery Requests as modified by agreement between the

parties.  In particular, the United states claims that USM's responses are deficient in that "they

fail to explain how PCBs are created and disposed; fail to explain the bases of USM's defense

that its PCB manufacture is legal; and fail to explain why samples of its wastes, in some cases

samples taken by its own contractors, are not representative of Facility wastes."[3]

## DISCUSSION

## A.  Interrogatory No. 2–Engineering Information Concerning Electrolytic Cells, Cathode Scrubber, & Chlorine Bypass Scrubber.

Interrogatory no. 2 of the United States' February 6, 2006, discovery requests asked

USM to respond to all prior requests propounded to MagCorp.  USM objected to this

interrogatory on the ground that it would require responses in excess of the limit of 25

---

[2]Memorandum in Support of United States of America's Motion to Compel Answers by US Magnesium LLC to the United States' Discovery Requests to Defendants in Phase I of the Consolidated Case ("US Mem.") at 1-2, Docket No. 263, filed under seal, June 1, 2006.

[3]*Id.* at 2.

interrogatories specified by order of this court.[4]  The parties then reached a compromise concerning the information which the United States would accept in satisfaction of Interrogatory no. 2.  However, there apparently was a misunderstanding between the parties as to what the agreement encompassed since USM now contends that its amended response to Interrogatory no. 2 fully complies with the parties' compromise, while the United States disagrees.

In its reply memorandum, the United States has refined its requests with regard to Interrogatory no. 2, stating that it seeks "detailed engineering information regarding pieces of equipment known as the Electrolytic Cells; the Cathode Scrubber; and the Chlorine Bypass Scrubber."[5]  The United States expressly asks for the following information:

> [1] descriptions of the pieces of equipment;
> [2] the chemical reactions occurring therein;
> [3] the maintenance activities performed thereon;
> [4] the design specifications of the equipment;
> [5] the location of the equipment;
> [6] information on weights, volumes, characteristics, temperatures and types of each input into and output from each piece of equipment;
> [7] information on how and where outputs are disposed; and
> [8] drawings, diagrams and data associated with all of the above.[6]

The court concludes that USM should provide this information and hereby orders it to supplement its responses accordingly.

---

[4]*Id.*

[5]Reply Brief of the United States of America in Support of the United States' Motion to Compel Answers and Responses by US Magnesium LLC ("Reply") at 1-2, Docket No. 273, filed July 5, 2006.

[6]*Id.* at 2.

**Interrogatory No. 3–Representativeness of Waste Samples**

Requests for Admission Nos. 5, 7-9, and 12-17 concerned specified wastes which had sample results showing PCBs at levels greater than regulatory thresholds.[7]  USM denied Requests Nos. 5, 7-9, and 12-13 on the ground that the samples had not been shown to be "representative" of the facility's wastes.[8]  It denied Requests nos. 14-17 "based upon information presently known to it."[9]

Interrogatory No. 3 asked USM to explain the basis for each of its denials of Requests for Admission.  USM objected to the interrogatory on the ground that it would require USM to provide more than 25 interrogatory responses.[10]  Through negotiations, the parties reached an agreement that, rather than explain each denial, USM need only explain the basis of its denial of Request No. 10.[11]  Request No. 10 stated:  "Admit that USM has not disposed of PCB remediation waste in accordance with 40 C.F.R. § 761.61(b)."[12]  Unfortunately, the parties now disagree as to what should have been included in USM's response to Request No. 10.  The United States expected the response to Request No. 10 to explain USM's position with respect to its claim that the samples do not represent facility wastes, but USM's response did not address

---

[7]US Mem. at 11.

[8]USM's March 6, 2006 discovery responses at 40-41, 42-43.  Copies of the discovery responses may be found in Appendix B to US Mem.

[9]*Id.* at 43-45.

[10]*Id.* at 5-6.

[11]US Mem. at 12 & footnote 12; Defendant US Magnesium LLC's Memorandum in Opposition to United States of America's Motion to Compel ("USM Mem.") at 4, Docket no. 267, filed June 21, 2006..

[12]USM Mem. at 4.

this issue.[13]  In opposition to the motion to compel, USM maintains that it complied with the agreement between the parties by answering Request No. 10, and the United States should not be allowed to renege on its agreement.[14]

It is apparent from the parties' submissions that there was a misunderstanding as to what was required of USM in the way of a response to Request for Admission No. 10.  However, as the issue of the representativeness of waste samples appears to be crucial to the parties' claims and defenses, the court concludes that USM should be required to explain its assertion that the waste samples were not  representative.

**Interrogatory No. 4–PCB Creation & Dispersion**

Interrogatory No. 4 asked USM to explain how PCBs are formed at the facility, and "how they are distributed throughout the facility from phase to phase, waste stream to waste stream, and unit to unit . . . ."[15]  USM responded:

> Any PCBs formed in the facility are unintentionally created.  The company has no special knowledge as to how they are formed, how they are distributed from phase to phase, waste stream to waste stream, and unit to unit other than knowledge contained in documents that are already in the possession of EPA.  PCBs may, based upon USMag's general understanding, be unintentionally created at particular temperatures, chemical constituent concentrations and retention times.
>
> . . . .
>
> Further, the creation of PCBs at the Rowley facilities is likely to be the subject of substantial expert investigation, study and testimony.  USMag will

---

[13]See USM's Amended Answer to Interrogatory No. 3, at 7-8.  The amended discovery responses are part of Appendix B to US Mem.

[14]USM Mem. at 5.

[15]Interrogatory No. 4, USM's amended responses at 8.

provide such information and materials to the extent, and in the time, required under the Rules of Civil Procedure."[16]

The United States contends that USM's response is inadequate because it "does not answer whether PCBs are in fact created, at which particular temperatures they form, the particular concentrations at which they are present, or the particular retention times necessary for their formation."[17]   The United States asserts that USM is a "highly sophisticated operation" with engineers and chemists on staff "who must be familiar with the chemistry of PCB formation and distribution."[18]   The United States thus concludes that "it simply cannot be believed that USM lacks 'specialized knowledge' on basic chemical reactions."[19]

In response, USM points out that its discovery responses are made under oath.  USM states:

> USMag simply does not possess knowledge as to how PCBs are actually formed ***at the facility***, how they are distributed from phase to phase ***at the facility***, waste stream to waste stream ***at the facility***, and unit to unit ***at the facility***, as such knowledge requires expert investigation and analysis (which is ongoing and not yet due).  This fact is not changed by the fact that USMag has various "engineers and chemists on its staff."  Any knowledge regarding general principles of PCB creation and destruction that might be possessed by such individuals does not automatically translate to knowledge regarding PCB creation and destruction ***at the facility***.[20]

---

[16]USM's Amended Answer to Interrogatory no. 4, at 8-9.

[17]US Mem. at 9.

[18]*Id.* at 10.

[19]*Id.*

[20]USM Mem. at 7 (emphasis in original).

USM has stated under oath that it does not possess knowledge at this time that is responsive to Interrogatory No. 4. Therefore, the court denies the United States' motion to compel with regard to Interrogatory No. 4.

**2. Interrogatory No. 6–Chlorine Reduction Burner & Melt/Reactor Deluge.**

Interrogatory No. 6 seeks information regarding discharges from pieces of equipment known as the Chlorine Reduction Burner and Melt/Reactor Cells. In particular, the United States seeks information about discharges described as "deluge events," in which equipment overheats and is flushed with a large volume of water, which becomes contaminated from contact with the equipment. The United States is concerned that USM is illegally disposing of the contaminated water.[21]

The United States complains that USM has provided no information with regard to Melt/Reactor deluge, including the reasons deluge occurs, such as why the equipment overheats. Although USM provides a general description of Chlorine Reduction Burner deluge, it does not describe how often deluge occurs or the reasons it occurs. Instead, USM describes deluge events as "infrequent" and states that it has no records of such events. The United States argues that the statement that the deluge events are "infrequent" is so vague as to be meaningless, and the answer that it has no records is inadequate. The United States asserts that the rules require that USM must try to come up with a responsive answer, including by interviewing present and former officers and employees, if necessary.[22]

---

[21]US Mem. at 6.

[22]*Id.*

USM did not address this issue in its opposition memorandum.  The United States therefore contends that USM should be ordered to provide a complete response to interrogatory no. 6.[23]  The United States has submitted a proposed order which would require USM to "supplement its Amended Answer to Interrogatory No. 6 by providing all non-privileged information known to USM about Chlorine Reduction Burner and Melt/Reactor deluge events and identify all documents relating to these matters and all persons having knowledge of these matters."[24]

USM's March 6, 2006 discovery response stated that there are no records kept of deluge events or volumes of discharges.[25]  It further stated:

> USMag  is in the process of identifying and gathering non-privileged documents responsive to this interrogatory, to the extent they exist and have not been previously produced, and will produce the same in the time and manner agreed upon by the parties with respect to the parties' various requests for production.  USMag will identify people with knowledge of such documents at that time.[26]

It appears that USM has already provided the names of persons with knowledge or information pertaining to Interrogatory no. 6 in its amended response.[27]  The United States thus may depose these individuals to explore what information they may possess containing deluge events.  Again, the court notes that USM's discovery responses were made under oath.  The

---

[23]Reply at 3-4.

[24]Proposed Form of Order Compelling Answers by US Magnesium LLC to the United States' Discovery Requests to Defendants in Phase I of the Consolidated Case ("Proposed Order"), dated July 2006.

[25]USM's March 6, 2006 Answer to Interrogatory no. 6, at 10, 11.

[26]*Id.* at 11.

[27]USM's Amended Answer to Interrogatory No. 6, at 11.

court takes USM at its word that it will produce all non-privileged documents that are responsive

to this request.  Accordingly, the court will not order that this information be produced at this

time.

**Interrogatory No. 14–USM's Affirmative Defense That Its PCB Production Is Not Illegal**

As part of a compromise between the parties with regard to Interrogatory No. 14, USM

"agreed to provide a narrative response regarding its Fifth Affirmative Defense, which asserted

that 'Plaintiff's claims are barred, in whole or in part, to the extent that the PCBs at issue are

manufactured in an excluded manufacturing process and not subject to the regulations or

prohibitions referenced by Plaintiff.'"[28]  In its amended discovery responses, USM stated:

> As noted in United States' Complaint, 40 C.F.R. § 761.1 "exempts from subpart B
> regulation the inadvertent manufacture of PCBs generated as unintentional
> impurities in 'excluded manufacturing processes'" that meet certain criteria.
> (Complaint ¶ 20.)  There is no bona fide dispute as to the fact that any PCBs
> generated at the Rowley facilities are inadvertently manufactured as unintentional
> impurities.  Further, USMag believes that the pertinent evidence, the majority of
> which is yet to be developed through expert analysis and testimony, will
> demonstrate USMag's compliance with all necessary criteria relating to the
> exemption in question.
>
> USMag is presently in the process of reviewing documents produced by
> plaintiff in response to US Mag's discovery requests.  USMag is also in the
> process of reviewing and producing documents that are or may be responsive to
> plaintiff's various discovery requests, including this interrogatory.  Evidence
> supporting USMag's assertion is also likely to be discovered or developed during
> the course of expert discovery, which has yet to be completed.  USMag will
> identify the evidence supporting its contention, along with the person or persons,
> having possession, control or custody of such evidence, in the time and manner
> provided for under the Rules of Civil Procedure.[29]

---

[28]USM Mem. at 8.

[29]USM's Amended Answer to Interrogatory no. 14, at 16-17.

The United States contends that this response is inadequate, apparently because it does not provide sufficient detail as to how USM believes it meets the criteria to qualify for the defense as set forth in the regulations.  The court concludes, however, that USM's response apprises the United States of the basis of its defense although not in the detail that the United States would like.

As previously noted, USM's responses are made under oath.  In its opposition memorandum, USM reiterates that "expert investigation and discovery is necessary (and not even due to be yet completed under the Order of the Court) to establish compliance with the referenced criteria."[30]  It further states that it will fulfill its obligation under Rule 26 of the Federal Rules of Civil Procedure to supplement its response at the appropriate time.[31]  Accordingly, the court denies the motion to compel with regard to Interrogatory No. 14.

**USM's Production of Documents**

The United States, in its reply memorandum, has refined its argument with regard to production of documents to "focus exclusively on the adequacy of USM's responses to Requests for Production, and the manner in which USM made its responses."[32]  The United States asserts that "USM has provided no 'key' or other mechanism that would enlighten the United States as to why certain documents were produced.  To the contrary, USM's production more closely resembles the type of 'document dump' courts find inadequate."[33]

---

[30]USM Mem. at 9.

[31]*Id.*

[32]Reply at 6-7.

[33]*Id.* at 7.

Under Rule 34(b) of the Federal Rules of Civil Procedure, "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."[34]  USM states that it has complied with Rule 34(b) by producing the documents as they are kept in the usual course of business.[35]  USM produced the documents in a word-searchable electronic format pursuant to an agreement between the parties.[36]

The United States cites *Bergersen v. Shelter Mutual Insurance Company*[37] in support of its argument that USM's document production is inadequate.  In *Bergersen*, the court discussed some difficulties that may be encountered when producing documents electronically.  It observed that when hard-copy documents are scanned onto a CD for production, "a receiving party may not be able to determine which specific images comprise a single document or attachments to a document since there are no staples which bind together the scanned images as they would hard copies in a file."[38]  According to *Bergersen*, some courts, when faced with this problem, have required the producing party "to label, organize or index documents being produced, if doing so is necessary to make the documents usable by the requesting party."[39]  The court further observed that parties producing documents electronically often enter into an agreement concerning the

---

[34]Fed. R. Civ. P. 34(b).

[35]USM Mem. at 9.

[36]US Mem. at 13.

[37]No. 05-1044-JTM-DWB, 2006 WL 334675 (D. Kan. Feb. 14, 2006).

[38]*Id.* at *2.

[39]*Id.*

procedure to be followed.  Such agreements might contain provisions for "(1) keying which documents were produced from electronic files and which were scanned from hard-copy files, (2) keeping multi-page documents as a unit, (3) providing source information which identifies, where possible, the custodian of a particular document or set of documents, etc."[40]

USM responds that the facts of this case are very different from those that apparently existed in *Bergersen*:

> USMag has retrieved and copied responsive documents in exactly the same manner as they are kept in their files.  Multiple page documents have been maintained as such and all documents have been maintained in the same sequential order as they are maintained in USMag's hard files.  Moreover, there is no bona fide question as to the origin and custody of the documents in question and United States is under no uncertainty as to the fact that the documents are copies of hard-copy documents.[41]

In its reply, the United States provides the following examples to show why USM's production is in an unusable format:

> [1]  Thousands of documents do not appear to have been produced as they may have been kept in USM's files.  For example, pollution release reports are mixed with check requests and purchase requisition forms (USM020628-021734).

> [2]  While certain documents appear to have been produced as "filed," "files" can only be located by the United States' manually reviewing every single image in search of a scanned image of a file and file label.

> [3]  Assuming a "file" is found, it is often misleading.  For example, memoranda regarding 1990 maintenance of the waste pond (USM006580) and 1989 sampling of pond contents (USM006238) are mixed with hundreds of pages of 1999 analytical data on multiple units.

---

[40]*Id.*

[41]USM Mem. at 10-11.

[4]  It cannot be ascertained where certain documents begin and end: sometimes a multi-page document is scanned as a single document; many other times, each page of a multi-page document is scanned as a separate document. For example, a single December 20, 2000 "Order" appears as 40 discrete documents (USM-024440-024481).[42]

The United States contends that USM should be required to provide some guidance such as the "key" discussed in *Bergersen* to explain its production.  The United States proposes that the key identify "the files produced, their bates ranges, and the topics their contents address."[43]

In support of its motion, the United States cites *In re:  Thomas Consolidated Industries, Inc.,*[44] in which the plaintiff responded to document requests by making available for inspection several file cabinets containing documents.  The plaintiff did not identify which documents were responsive to each document request.[45]  The court held that this discovery response was inadequate.  The court noted that while the federal rules allow a party to produce documents as they are kept in the ordinary course of business, the plaintiff remained "obligated to sort through the documents himself and then produce *only* those responsive to the documents requests. . . . It was insufficient for the plaintiff merely to provide defendants access to sort through plaintiff's documents in search of documents responsive to their document requests."[46]

In this case, USM's document production is substantially different than in the *Thomas* case.  Here, USM provided copies of purportedly responsive documents in an electronic format

---

[42]Reply at 7-8.

[43]*Id.* at 9.

[44]No. 04 CV 6185, 2005 WL 3776322 (N.D. Ill. May 19, 2005), *aff'd*, No. 05-2729, ___ F.3d ___ (7th Cir. Jul. 31, 2006)(text not available in Westlaw).

[45]*Id.* at *1.

[46]*Id.* at *8.

which is word-searchable.  Further, USM has represented that these documents were provided to the United States exactly as they were kept in the usual course of business, though no key or index has been provided.[47]  There is no indication that USM has provided every document in its files so that the United States is forced to comb through voluminous documents that are not responsive, as was the case in *Thomas*.  But USM's document production lacks a key or index, resulting in the problems in reviewing the documents cited by the United States, especially considering the volume of documents produced.  USM should be required, using bates numbers, to identify (a) the files or sources of the documents and (b) the custodian of each file or set of documents to enable the United States to depose those persons.

**Other Items in the United States' Proposed Order**

The United States' proposed order of July 2006 contains several items that were not discussed in its opening memorandum.  Thus, USM has not had the opportunity to respond to them.  Accordingly, the court declines to grant the motion to compel with respect to those requests at this time.

---

[47]USM Mem. at 11.

# ORDER

The motion to compel is GRANTED IN PART and DENIED IN PART as follows:

**Interrogatory No. 2.**

USM shall supplement its Amended Answer to Interrogatory No. 2 by providing detailed

engineering information concerning the Electrolytic Cells; the Cathode Scrubber; and the

Chlorine Bypass Scrubber to include the following:

[1] descriptions of the pieces of equipment;
[2] the chemical reactions occurring therein;
[3] the maintenance activities performed thereon;
[4] the design specifications of the equipment;
[5] the location of the equipment;
[6] information on weights, volumes, characteristics, temperatures and types of
each input into and output from each piece of equipment;
[7] information on how and where outputs are disposed; and
[8] drawings, diagrams and data associated with all of the above.

**Interrogatory No. 3.**  With regard to Interrogatory No. 3, USM shall explain the bases of

its position on the "representativeness" of samples taken of facility wastes and media.

**Interrogatory No. 4.**  The court **denies** the United States' motion to compel with regard

to Interrogatory No. 4.

**Interrogatory No. 6.**  The court **denies** the United States' motion to compel with regard

to Interrogatory No. 6.

**Interrogatory No. 14.**  The court **denies** the United States' motion to compel with regard

to Interrogatory No. 14.

**USM's Production of Documents.**  USM shall, using bates numbers, identify (a) the files or sources of the documents and (b) the custodian of each file or set of documents to enable the United States to depose those persons.

**Other Items Listed in the United States' Proposed Order.**  The court **denies** the United States' motion to compel with regard to all other items in the motion papers and proposed order.

August 2, 2006.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge