IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MAGNESIUM CORPORATION OF AMERICA, et al.,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER RE:  MOTION TO COMPEL THE UNITED STATES TO DESIGNATE RULE 30(B)(6) WITNESSES**<br><br>Case No:  2:01-CV-40 DB<br><br>District Judge Dee Benson<br><br>Magistrate Judge David Nuffer |

Defendant US Magnesium LLC ("USM") has filed a motion to compel the United States to designate witnesses with knowledge of matters identified in three amended Rule 30(b)(6) deposition notices.[1]  For the reasons discussed below, the court grants the motion.

The notices at issue identify three subject matter areas upon which USM wishes to question the deponents:  ecological risk assessment, human health risk assessment, and corrective action.[2]  On July 11, 2006, USM served the United States with three 30(b)(6) deposition notices relating to the three subjects.  The United States objected to the original notices on several grounds, including that they were vague and overbroad.  Although USM disagreed in most

---

[1]Defendant US Magnesium LLC's Motion to Compel the United States to Designate Rule 30(b)(6) Witnesses, docket no. 305, filed August 31, 2006.

[2]The amended deposition notices are attached as Exhibits A, B, & C to USM's Memorandum in Support of Defendant US Magnesium LLC's Motion to Compel the United States to Designate Rule 30(b)(6) Witnesses ("Supporting Mem."), docket no. 306, filed August 31, 2006.

respects, it revised and narrowed its amended notices which were served on the United States on

August 14, 2006.[3]

USM states that its amended deposition notices "relate to relevant and significant issues

in this litigation, namely, facts pertaining to EPA's evaluation of ecological and human risk at the

Rowley facility and similar sites elsewhere, and facts pertaining to EPA's practices regarding

remediation and corrective action at the Rowley facility and similar other sites."[4]  Yet, the United

States has repeatedly refused to designate and prepare a witness or witnesses to testify concerning

these issues.[5]  USM therefore requests the court to compel the United States to designate and

prepare a witness, or witnesses, to testify concerning the subjects identified by USM in its

deposition notices as required by Rule 30(b)(6).

In opposition, the United States asserts that the motion to compel should be denied for

three reasons:  (1) USM's notices of deposition "fail to 'describe with reasonable particularity the

matters on which examination is requested,' as required by Rule 30(b)(6);" (2) "the information

sought is as available to Defendant as it is to Plaintiff;" and (3) "the discovery sought is overly

broad and unduly burdensome and expensive for the United States to produce it."[6]

---

[3]Supporting Mem. at 2.

[4]*Id.*

[5]*Id.*

[6]Plaintiff's Opposition to Motion to Compel and Motion for Protective Order ("Opposition Mem.") at 1-2, docket no. 321, filed October 10, 2006.

**DISCUSSION**

**Reasonable Particularity**

Rule 30(b)(6) provides that a deposition notice may name a government agency as the deponent and "describe with reasonable particularity the matters on which examination is requested." In response, the organization so named must designate one or more individuals to testify on its behalf as to "matters known or reasonably available to the organization."[7] USM states that its notices fully comply with the requirements of Rule 30(b)(6), and the United States is therefore obligated to designate one or more witnesses to give testimony on the matters identified in the notices.[8]

In response, the United States asserts that it is unable to identify witnesses with knowledge of the specified subject matters because USM's notices fail to "describe with reasonable particularity the matters on which examination is requested."[9] The United States asserts that

> EPA has information about many thousands of environmental sites across the country that have involved USM's stated 30(b)(6) subjects, dating back to the 1970's. . . . EPA does not assign the sites according to the subjects identified by USM, but they have been managed by hundreds of EPA personnel under at least

---

[7]The pertinent portion of Rule 30(b)(6) provides as follows:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters known or reasonably available to the organization.

[8]Supporting Mem. at 5.

[9]Opposition Mem. at 3.

three different management hierarchies within EPA, namely CERCLA, RCRA, and TSCA. . . . EPA's employees typically have direct knowledge only of the sites on which they work or directly supervise and if USM will inform the government which sites it wants to learn about, the United States will provide a witness with information about the sites.[10]

In addition, the United States says that other federal agencies such as the Fish and Wildlife Service, and the National Oceanic and Atmospheric Administration probably have information that would be responsive to USM's notices.  Since multiple agencies thus are involved in the sites, the search for information would be much broader than represented by USM which stated in its memorandum that its notices do not require a search for information in multiple federal agencies.[11]

The United States asserts:

Given this large scope of information on environmental sites, USM has stated its deposition subjects so vaguely and broadly that the United States cannot know what kind of information USM wishes to pursue, in order to identify persons with knowledge about them.  Literally hundreds of EPA employees have *some* knowledge about some stated subjects and thousands have knowledge of others, but without more specificity, it is impossible for the government to know whom to find and designate as a witness with knowledge about the subjects USM Wants [sic] to learn.  For example, USM's notices do not limit its deposition subjects by time (EPA's many thousands of sites span a 40+ year period) or location (EPA's sites span all the nation's 50 states and EPA's 10 regions).[12]

The United States also contends that USM has not reasonably restricted the scope of its subjects.  It asserts that contrary to the representation in USM's memorandum that "the notices require only that the United States' designee or designees have knowledge regarding *significant*

---

[10]*Id.* at 3-4.

[11]*Id.* at 4; see Supporting Mem. at 5.

[12]Opposition Mem. at 4.

EPA ecological or human health risk assessments,"[13] "the noticed subjects contain no such limitation."[14]  Further, the United States contends that even if the notices were limited to "significant matters," the burden of making such judgments would be improperly placed on the United States, instead of on the party conducting discovery.[15]  In addition, the United States maintains that "the sheer breadth of USM's subjects would yield an enormous harvest of 'significant' . . . environmental sites that would be responsive to the requests and make it practically impossible to know where to start or what person to offer as a witness."[16]  The United States explains that the EPA has conducted several thousand risk assessments across the country. Several of USM's listed subjects would require investigation of many EPA sites.  For each of those sites, the site or project manager, or his supervisor, likely would be the designee for it.  As a result, "the requested deponents would probably number in the scores and represent most, if not all, of EPA's ten regions."[17]

     After reviewing the submissions of both parties, the court concludes that USM's deposition notices are sufficiently narrow in scope and identify the subject matter with reasonable particularity to enable the United States do designate witnesses.  First, as USM points out, more than half of the subjects upon which it seeks information pertain only to the Rowley,

---

[13]Supporting Mem. at 4.

[14]Opposition Mem. at 5.

[15]*Id.*

[16]*Id.*

[17]*Id.*

Utah facility which is the subject of this litigation.[18]  The United States should have little trouble identifying witnesses with knowledge of information pertinent to those subjects.

With regard to information concerning other sites, each of USM's requests relate to the prior use of risk assessments in remedial or corrective action decisions.  As discussed, the United States complains that even if these risk assessments are limited only to those that are "significant," the burden of making that determination is unfairly placed on the United States. USM states that "significant risk assessments" would include only those "which EPA relied upon as a substantial or principal factor in determining what corrective action should be implemented" and those that are "related to facilities similar to USM's Rowley plant."[19]  Thus, USM is not seeking information concerning every risk assessment that the EPA has ever conducted as the United States suggests, but only those risk assessments that were relied upon as a substantial factor in corrective or remedial action decisions.  The court believes that with this limitation, the United States should be able to identify witnesses with knowledge of the pertinent risk assessments.

Finally, USM states that its requests are limited to information within EPA's knowledge; thus, the United States is not required to search for information possessed by other agencies as the United States suggested in its memorandum.[20]  Accordingly, the court concludes that USM's requests are described with reasonable particularity.

---

[18]Reply in Support of Defendant US Magnesium LLC's Motion to Compel United States to Designate Rule 30(b)(6) Witnesses ("Reply Mem.") at 4, docket no. 330, filed October 19, 2006.

[19]Supporting Mem. at 4-5.

[20]*Id*. at 5; Reply Mem. at 5, footnote 6.

**Public Availability of the Information**

The United States asserts that this dispute is largely about who should conduct the search for the information USM seeks.  It contends that the information is publicly available and that it is in no better position to conduct the investigation than is USM.  The United States argues that the rules provide that each party has a duty to prepare its own case, to the extent reasonably possible,  without unduly burdening the opposing party to gather the information it seeks.[21] Although the United States does not question that USM needs the materials it seeks, the United States contends that it would be unjust to require it to conduct the investigation when USM is able to do its own investigation.[22]

The United States maintains that it would be an enormous task to sift through the EPA's information about environmental sites for the categories of information requested by USM.  Such a search probably would begin with a review of the site files for each EPA region focusing specifically on risk assessments.  Since there is no database that categorizes the kinds of information USM seeks, a manual site-by-site review probably would be required.  Further complicating the search, some of the files are on-site at the regions, but others have been archived and would have to be delivered to the region.  In addition, there is no standard filing method and a researcher probably would have to go through many boxes and documents to find the information.  Even then, there would be no guarantee that most sites would have information

---

[21]Opposition Mem. at 6 (citing *Olmert v. Nelson*, 60 F.R.D. 369, 370 (D.D.C. 1973)).

[22]Opposition Mem. at 7.

that USM needs.[23]  In conclusion, the United States believes that "it is likely difficult or impossible for anyone to conduct such a large investigation in a comprehensive way in less than a year."[24]

According to the United States, the EPA regularly responds to requests from the public for information, and would make its site files available for inspection by USM if requested to do so.  Each region is required to maintain a reading room open to the public where copies of its administrative records for site files are kept.  The United States has advised USM of the types of documents expected to contain the most information concerning its listed subjects.  In sum, the United States contends that the process for finding information relating to USM's subjects would be the same for the United States as it would be for USM.[25]

Finally, the United States suggests that USM could use the EPA's internet websites to identify more specific subjects that it wishes to pursue.  In addition, USM could ask EPA employees for help in identifying sites that might have dealt with relevant matters.[26]

USM responds that the information it seeks does not appear to be "publicly available."  It states that in response to the United States' allegations that the information is publicly available, it asked its litigation consultants to search for relevant publicly available information.  Although the consultants conducted internet searches on EPA's website and submitted a Freedom of Information Act ("FOIA") request to EPA Region 8, the searches provided very little relevant

---

[23]*Id.* at 7-8.

[24]*Id.* at 7-8.

[25]*Id.* at 8.

[26]*Id.* at 9.

information.[27]   Further, USM argues that even if the information were publicly available, that fact

would not eliminate the United States' duty to comply with the Federal Rules of Civil

Procedure.[28]

Under Rule 30(b)(6), a government agency has the duty "to name and produce one or

more persons who consent to testify on its behalf as to matters known *or reasonably available to

the organization*."[29]   The agency "must make a conscientious good-faith endeavor to designate

the persons having knowledge of the matters sought . . . and to prepare those persons in order that

they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject

matters."[30]   The duty to prepare the designee imposed by the rule "goes beyond matters

personally known to the designee or to matters in which that designee was personally involved."[31]

Such preparation "requires a good faith effort [by] the designate to find out the relevant facts–to

collect information, review documents, and interview employees with personal knowledge."[32]

The duty of preparation may require the interviewing of past employees.[33]

[27]Supporting Mem. at 9; Wolf Aff. attached to Supporting Mem. as Ex. E.

[28]Supporting Mem. at 9 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989)("FOIA was not intended to supplement or displace rules of discovery."); *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 898 n.5 (10th Cir. 1992)("FOIA is not a substitute for discovery"), *vacated on other grounds*, 509 U.S. 918 (1993)).

[29]*Mitsui & Co. v. Puerto Rico Water Resources Auth.*, 93 F.R.D. 62, 66 (D.P.R. 1981)(emphasis added)(citing 8A Charles Alan Wright, et al., *Federal Practice and Procedure*, §§ 2103, 2110 (2d ed. 1994)).

[30]*Mitsui & Co.*, 93 F.R.D. at 67.

[31]*Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005)(quoting *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000)).

[32]*Wilson*, 228 F.R.D. at 528.

[33]*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)(duty of preparation may require obtaining information from documents, past employees, and other sources);*Wilson*, 228 F.R.D. at 528(same).

As USM argues, the EPA "has vastly superior knowledge of its own risk assessments and its own operations."[34]  Further, USM states that the "EPA has expressly indicated that there is a well defined chain-of-command under which those persons responsible for overseeing the types of risk assessments and corrective actions for which USM seeks information are clearly delineated and easily identified within each Region."[35]  The United States "has less of a burden in locating information responsive to the issues identified in USM's amended notices because EPA is its client, and therefore it has unfettered access to EPA's internal chain-of-command structure."[36]  In contrast, USM does not have authority to go to the various regions and interview EPA employees.  Accordingly, the United States is in a better position than USM to locate material responsive to USM's deposition subjects with more efficiency of effort.

In its submissions, USM suggests methods by which the United States could organize the task of locating knowledgeable individuals and responsive documents.[37]  While the court will not order the United States to follow any particular procedure in locating responsive information, USM's suggestions do appear to provide reasonable approaches to resolving this issue.

**Undue Burden**

The United States asks the court to restrict USM's discovery requests because the information at issue "can be obtained in another way that is more convenient, less burdensome,

---

[34]Reply Mem. at 3.

[35]*Id.* at 2.

[36]*Id.* at 7.

[37]Supporting Mem. at 8; Reply Mem. at 2, 7.

and less expensive to the United States."[38]  Although the United States concedes that such an investigation would be burdensome to USM, it contends that it is only just to require USM to bear the burden of acquiring the information it seeks, so long as the information is reasonably available to it.  In the United States' view, "[it] would be manifestly unjust . . . for USM  to require the United States to expend its time and resources to conduct research USM is capable of doing for itself."[39]

For the reasons previously discussed, the court believes that the United States should be required to designate and prepare witnesses for the depositions.  As other courts have observed, "preparing for a Rule 30(b)(6) deposition can be burdensome."[40]  The court recognizes that selecting and preparing a witness or witnesses will entail significant effort on the part of the United States.  The court nevertheless concludes that USM's requests are reasonable, and the United States must comply.

## UNITED STATES' MOTION FOR A PROTECTIVE ORDER

In its opposition memorandum, the United States seeks a protective order "requiring Defendant to conduct its own research and then submit more particular subjects to Plaintiff to fill in missing details."[41]  As USM points out, however, the United States' motion is not properly filed because it does not comport with the applicable rules of procedure.[42]  In light

---

[38]Opposition Mem. at 11.

[39]*Id.*

[40]*Taylor*, 166 F.R.D. at 362; *accord Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 128 (D. Md. 2002).

[41]Opposition Mem. at 13.

[42]See DUCivR 7-1; Fed. R. Civ. P. 7.

of the court's granting USM's motion to compel, the court denies the motion for a protective

order on its merits, and declines to address the procedural argument.

### ORDER

Defendant US Magnesium LLC's Motion to Compel the United States to Designate Rule

30(b)(6) Witnesses[43] is **GRANTED**.  The United States' motion for a protective order[44] is

**DENIED**.

November 27, 2006.

BY THE COURT:

_____

David Nuffer
U.S. Magistrate Judge

---

[43]Docket no. 305, filed August 31, 2006.

[44]Docket no. 321, filed October 10, 2006.